TREG R. TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Brian E. Gregg (Alaska Bar No. 2107080)
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov
        brian.gregg@alaska.gov

Attorneys for State of Alaska

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALATNA VILLAGE COUNCIL, et al., | Case No. 3:20-cv-00253-SLG |
| Plaintiffs, | |
| v. | |
| THOMAS HEINLEIN, in his official capacity, et al., | **STATE OF ALASKA'S OPPOSITION TO DEPARTMENT OF INTERIOR'S MOTION FOR VOLUNTARY REMAND** |
| Defendants, | |
| and | |
| AMBLER METALS, LLC, et al., | |
| Intervenor-Defendants. | |

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 1 of 26

## TABLE OF CONTENTS

I.   FACTUAL BACKGROUND. ....................................................................... 3

 A.  Congress' Authorization of the Ambler Road Project. ........................... 3

 B.  Approval of Rights-of-Way for the Ambler Road Project. ...................... 5

  1.  AIDEA's Application. ......................................................................... 5

  2.  The Environmental Review Process. ...................................................... 5

  3.  The Rights-of-Way Issued to AIDEA ..................................................... 7

II.  INTERIOR'S MOTION IMPERMISSIBLY REQUESTS THE OPTION OF
MODIFYING OR REVOKING PERMITS ALREADY ISSUED .................................. 8

III.   IN LIGHT OF THE AGENCIES' THOROUGH REVIEW, THERE ARE NO
LEGITIMATE GROUNDS FOR VOLUNTARY REMAND. ..................................... 10

 A.  BLM Complied with Section 810 of ANILCA. .................................... 11

 B.  BLM Complied with Section 106 of the NHPA. .................................. 16

 C.  No Reason Is Given for Supplementing the EIS. .................................. 22

IV.  CONCLUSION AND RELIEF REQUESTED ...................................... 22

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                              Page i

Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 2 of 26

Defendant Department of the Interior ("Interior")[1] has moved for an order that would remand decisions of the Bureau of Land Management ("BLM") and the National Park Service ("NPS") approving right-of-way permits held by the Alaska Industrial Development and Export Authority ("AIDEA") back to Interior for an improper, open-ended reevaluation. This Motion lacks merit and should be denied.

Interior's requested relief conflicts with the streamlined process required for review and approval of transportation and utility systems ("TUS") under the Alaska National Interest Lands Conservation Act ("ANILCA")[2] as well as Congress' express policy determination to authorize the Ambler Road.[3] Further, ANILCA prohibits injunctive relief against a decision approving a TUS lasting longer than 90 days except in conjunction with a final judgment.[4] Yet, in conflict with ANILCA's provisions, Interior has not proposed any deadlines or limitations on remand to insure compliance with the 90-day requirement.

---

[1] The Motion variously refers to "Defendants" and "agencies," suggesting that all of the federal agencies with some degree of authority over the Ambler Road Project join in the Motion. Mot. at 2. On closer inspection, however, it is apparent that the Motion is brought by the Interior Department and its agencies, BLM and NPS. The other federal agencies involved in authorizing the project – who are also parties to this case – have not joined in the motion.

[2] 16 U.S.C. §§ 3161-3168; *see also* 43 C.F.R.pt. 36) (regulations governing applications for TUS across conservation system lands in Alaska).

[3] 16 U.S.C. § 410hh(4).

[4] *Id*. § 3168.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 1
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 3 of 26

The burden of establishing grounds for voluntary remand is on the agency.[5]  Here, Interior relies on the broad principle that agencies have inherent authority to reconsider their decisions, but the entity responsible for constructing and operating the Ambler Road, AIDEA, has held the rights-of-way since early 2021.[6]  Their suspension and cancellation are governed by statutes and regulations, which Interior has ignored.  Interior has cited no authority supporting voluntary remand under these unique circumstances.[7]

Moreover, Interior has failed to provide a bona fide, good faith basis for remand. As explained below, BLM, NPS, and other federal agencies conducted a thorough review of the Ambler Road Project's impact.[8]  BLM, as the lead agency, complied with the requirements of Section 810 of ANILCA, including imposing measures to minimize and mitigate impacts to subsistence resources and users.[9]  BLM also consulted with numerous Alaska Native villages and tribal entities in accordance with the National Historic Preservation Act ("NHPA") and its implementing regulations, and has developed a

---

[5] *Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436–37 (D.C. Cir. 2018).

[6] *See* NPS_0049696; BLM_0402514.

[7] *Wroten v. USAA Gen. Indem. Co.*, No. 3:20-CV-00137-SLG, 2021 WL 1617707 (D. Alaska Apr. 26, 2021) (noting that this Court would not address argument that was supported only by "broad legal citations"); *see also Miss. River Transmission Corp. v. FERC*, 969 F.2d 1215, 1217 n.2 (D.C. Cir. 1992) (denying motion for voluntary remand where agency failed to develop rationale supporting remand).

[8] *See, e.g.*, BLM_00166720-42 (summarizing the project, its purpose and need, the scope of analysis, public involvement, the decision rationale, and compliance with applicable laws and policies).

[9] *See, e.g.*, BLM_0016723, BLM_0016726, BLM_0016732.  Appendices C, D and E to the Joint Record of Decision describe numerous measures that AIDEA is required to undertake to avoid, minimize, and mitigate impacts to subsistence resources and uses.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 2
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 4 of 26

comprehensive programmatic consultation agreement that ensures the continued assessment of potential adverse effects to cultural resources and resolution of those effects.[10]

At bottom, the Motion is an improper attempt by Interior to prevent the Ambler Road Project from going forward. Remand is not warranted and should be denied.

This opposition is supported by the Declaration of Alaska Department of Fish and Game ("ADF&G") Commissioner Douglas Vincent-Lang, attached as **Exhibit A.** The State of Alaska also joins in the opposition to the Motion filed by AIDEA.

## I. FACTUAL BACKGROUND.

### A. Congress' Authorization of the Ambler Road Project.

Plaintiffs challenge the decisions of BLM, NPS, and the U.S. Army Corps of Engineers ("Corps") relating to the Ambler Road Project. In their opening briefs, filed on December 1, 2021, Plaintiffs assert that these agencies violated ANILCA, the National Environmental Policy Act ("NEPA"), the Clean Water Act ("CWA"), and the Federal Land Policy and Management Act ("FLPMA") in approving rights-of-way for the project.[11]

These cases trace back to the 1980 enactment of ANILCA.[12] At that time, Congress determined that "there is a demonstrable need for some form of improved

---

[10] BLM_0016731-34; BLM_0016931-7012; BLM_0016004-16.

[11] Plaintiffs in *Alatna Village Council* also asserted violations of the NHPA, but that claim, as briefed, is limited to quarreling with the size of the area of potential effects used by the BLM. *See* Plfs' Op. Br., No. 3:20-cv-253, ECF No. 99, at 57-59; *see also* BLM_0017005 (describing the APE).

[12] Pub. L. No. 96-487, 94 Stat. 2371.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                    Page 3
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 5 of 26

surface access to the Ambler mineral district,"[13] and authorized a transportation corridor across federal lands to connect the Ambler Mining District to the existing North Slope haul road (the Dalton Highway).[14] This goal was clearly expressed in ANICLA Section 201(4)(b), which provides:

> Congress finds that there is a need for access for surface transportation purposes across the Western (Kobuk River) unit of the Gates of the Arctic National Preserve (from the Ambler Mining District to the Alaska Pipeline Haul Road) and *the [Interior] Secretary shall permit such access* in accordance with the provisions of this subsection.[15]

Congress also enacted specific requirements for approval of the Ambler Road, including the type of environmental analysis needed to approve a route through the Gates of the Arctic National Park and Preserve ("GAAR").[16] In addition, in Title XI of ANILCA, Congress created a streamlined process that generally applies to approving TUSs that cross conservation system units in Alaska, including expedited environmental review and approval of right-of-way applications.[17] Congress directed that these streamlined procedures apply to the Ambler Road Project, except to the extent they are superseded by the requirements specific to the project.[18]

---

[13] H.R. Rep. No. 96-97, pt. 1, at 156 (1979).

[14] S. Rep. No. 96-413, at 147.

[15] 16 U.S.C. § 410hh(4)(b) (emphasis added); *see also* NPS_0009717-19 (describing the need for Ambler Road and explaining that Congress guaranteed access from the mining district to Dalton Highway in ANILCA).

[16] 16 U.S.C. § 410hh(4)(c)-(e).

[17] 16 U.S.C. §§ 3161-67; *see also* 43 C.F.R. pt. 36 (BLM regulations governing applications for TUS in and across conservation units in Alaska, implementing ANILCA).

[18] 16 U.S.C. § 410hh(4)(d)-(e).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 4

Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 6 of 26

**B.** **Approval of Rights-of-Way for the Ambler Road Project.**

1. AIDEA's Application.

In 2015, AIDEA began the process of effectuating the intent of Congress by filing

an application to build a 211-mile road from the Dalton Highway to the Ambler Mining

District pursuant to ANILCA Section 201(4)(a).[19]  About one-quarter of the road would

cross federal land, including 25 miles of public lands administered by BLM and 26 miles

of NPS-administered land in GAAR.[20]  Initially, the road would consist of a seasonal,

single-lane pioneer road that would be upgraded later to an all-season single-lane gravel

road.  It will operate as a private industrial access road and will not be open to the

public.[21]

2. The Environmental Review Process.

AIDEA's application triggered a robust NEPA process that took four years to

complete – well beyond the presumptive deadlines in ANICLA and BLM's regulations

governing TUS approval.[22]  This environmental review process involved extensive public

engagement, including numerous public meetings throughout Alaska and government-to-

government consultation meetings with Alaska Native villages and tribal councils

---

[19] *See, e.g.*, BLM_0015406-08 (background and overview of the project).

[20] *Id.*

[21] *Id.*; *see also* BLM_0016723-24.

[22] 16 U.S.C. § 3164(e)-(g); 43 C.F.R. §§ 36.6, 36.7(a).  A draft EIS should be issued nine months after the date on which the right-of-way application for the TUS is filed, the final EIS should be issued three months later, and the final decision to approve the right-of-way should be made four months after the notice of availability of the final EIS has been issued.  Thus, the approval process should take about 14 months.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                                            Page 5
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 7 of 26

conducted pursuant to Section 106 of the NHPA.[23]  The Final Environmental Impact Statement ("EIS"), issued in March 2020, is over 1,000 pages and cost nearly $5 million to produce.  It provides a comprehensive and detailed analysis of the probable effects of the Ambler Road Project including its effects on subsistence uses and cultural resources and requirements to mitigate those effects.[24]

In July 2020, a Joint Record of Decision ("JROD") was issued.  The JROD included BLM's decision to approve the Ambler Road route and authorize a right-of-way and associated temporary use permits for road construction and operation over BLM-managed lands, subject to numerous terms, conditions, environmental protection measures, and mitigation measures.[25]  Relevant to the instant motion, the JROD also included as Appendix E the final ANILCA 810 Evaluation[26] and three other appendices that include mandatory mitigation measures to avoid, minimize, and mitigate impacts to subsistence resources and uses.[27]  At the same time, NPS completed its Final Environmental and Economic Analysis ("EEA") for the Ambler Road segment passing

---

[23] *See* BLM_00160004-16 (Appendix I: Collaboration and Consultation).

[24] *See, e.g.*, BLM_0015578-99 (subsistence uses and resources); BLM_0015599-604 (cultural resources); BLM_ 0016018-105 (Section 106 Programmatic Agreement); BLM_0016188-411 (Subsistence Technical Report); BLM_0016412-41 (ANILCA Section 810 Final Evaluation).

[25] *See* BLM_0016710-49 (main body of JROD and Appendix A (maps of route)).  The JROD also included the decision of the Army Corps of Engineers to issue a permit authorizing the discharge of fill material in connection with constructing the road.  The Corps has not joined in the remand motion, and its environmental review is not at issue.

[26] BLM_0016809-41.

[27] BLM_0016723.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 6
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 8 of 26

through GAAR,[28] and the Secretaries of the Interior and Transportation issued their decision approving the road alignment in accordance with ANILCA Section 201(4).[29]

### 3. The Rights-of-Way Issued to AIDEA.

Ultimately, in January 2021, BLM issued its right-of-way to AIDEA, covering the segment of the Ambler Road administered by that agency.[30] Suspension and termination of BLM's right-of-way are governed by the provisions of 43 C.F.R. Part 2800, including 43 C.F.R. §§ 2807.16 to 2807.18. Also in January 2021, NPS issued its right-of-way to AIDEA, covering the segment of the Ambler Road administered by that agency. Suspension and termination of NPS's right-of-way are governed by the provisions of 36 C.F.R. Part 14, including 36 C.F.R. § 14.33.

On March 11, 2022, the Deputy Secretary of Interior issued a decision purporting to suspending the BLM right-of-way permit.[31] The Deputy Secretary's decision was based on conclusory assertions that "the agency" violated section 810 of ANILCA and section 106 of the NHPA. On March 14, 2022, the Deputy Secretary issued a decision purporting to suspend the NPS permit NPS for the same reasons.[32] Neither decision cites a statute or regulation that authorizes suspension of the permit.

---

[28] NPS_0009785-878.

[29] NPS_0009716-84; NPS_0009879 (Federal Notice announcing issuance of the EEA and ROD).

[30] BLM_0102514-53.

[31] ECF No. 122-1.

[32] ECF No. 122-2.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                  Page 7
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 9 of 26

## II. INTERIOR'S MOTION IMPERMISSIBLY REQUESTS THE OPTION OF MODIFYING OR REVOKING PERMITS ALREADY ISSUED.

Interior argues that, on remand, it could "decide to affirm, amend or terminate the right-of-way permits."[33]  No deadline is proposed for this review, nor is the process for "reconsideration" described.  It is entirely open-ended.  Thus, allowing Interior to reconsider its agencies' 2020 decisions would be allowing it to suspend, and possibly terminate, AIDEA's rights-of-way, actions that are unjustified, contrary to the applicable regulations, and could not otherwise be taken absent litigation.  Voluntary remand is therefore improper.[34]

Most of the decisions describing an agency's authority to seek voluntary remand deal with rulemaking or other general policies.[35]  In that context, an agency is acting in a legislative capacity and making policy that affects the general public.[36]  Here, by contrast, the policy decision behind the Ambler Road was already made by Congress and the Secretary is directed to approve the road in accordance with Section 201(4) of ANILCA.[37]  Thus, Interior's "discretion has been clearly constrained by Congress," and "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate."[38]  Further, unlike in the rulemaking context, where a rule can

---

[33] Mot. at 22.

[34] *Nat'l Parks Cons. Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009).

[35] *See, e.g.*, *Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012).

[36] *Willapoint Oysters v. Ewing*, 174 F.2d 676, 686 (9th Cir. 1949).

[37] 16 U.S.C. § 410hh (4)(b); *see also* 43 C.F.R. § 36.13(a)(1) ("Access for surface transportation purposes across [GAAR] . . . shall be permitted in accordance with the provisions of this section.").

[38] *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 8
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 10 of 26

always be undone, revocation of a permit held by a third party involves mandated regulatory procedures to protect the holder's rights.

In its Motion, as well as the suspension decisions, Interior ignores the requirements and procedures by which permit suspension and termination may occur.[39] For instance, 43 C.F.R. subpart 2807 provides the procedures for right-of-way administration including regulations governing permit suspension and termination.[40] Similarly, NPS has a specific regulation governing right-of-way cancelation.[41] Granting Interior's motion for voluntary remand would allow the Department to improperly sidestep these regulations to suspend, and possibly terminate, AIDEA's issued rights-of-way.[42]

Further, granting voluntary remand will result in undue prejudice to AIDEA. Voluntary remand is not appropriate where it "would unduly prejudice the non-moving party."[43] Here, a voluntary remand will result in an open-ended delay in the Ambler Road Project, despite Interior's failure to give a legitimate basis to suspend AIDEA's permits.

---

[39] *See* 43 U.S.C. § 1766 (FLPMA provision governing right-of-way suspension or termination).

[40] 43 C.F.R. §§ 2807.16 to 2807.19.

[41] *See, e.g.*, 36 C.F.R. § 14.33. Section 14.33 provides that "rights-of-way . . . shall be subject to cancellation for the violation of any of the provisions of this part applicable thereto or for violation of the terms or conditions of the right-of-way." *Id.* Here, NPS's permit had a number of conditions, but Interior specified none that AIDEA violated. NPS_0049701-0049702. Nor has NPS issued the required "specific order of cancelation." 36 C.F.R. § 14.33.

[42] *Nat'l Parks Cons. Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009).

[43] *Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018) (concluding that voluntary remand is inappropriate where it "would unduly prejudice non-moving party").

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                      Page 9
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 11 of 26

An agency cannot use voluntary remand to take back "supposedly vested interests . . . at the agency's change of mind."[44]

The propriety of voluntary remand is also inextricably intertwined in whether BLM and NPS can revoke right-of-way permits they have already issued. AIDEA's permits were validly issued and neither BLM nor NPS can revoke them without following mandated regulatory procedures in doing so.[45] In *Utilities Solid Waste Activities Group*, the court rejected voluntary remand because the agency's discretion "going forward" was wrapped up with the underlying claims.[46] Here too, voluntary remand is improper because any discretion either BLM or NPS exercises going forward by modifying or terminating AIDEA's permits is bound up in the merits of the underlying claim that BLM and NPS erred in issuing the permits. The Court should address whether BLM and NPS properly issued the permits first because, if they did, reconsideration is inappropriate.

## III.    IN LIGHT OF THE AGENCIES' THOROUGH REVIEW, THERE ARE NO LEGITIMATE GROUNDS FOR VOLUNTARY REMAND.

Interior has asserted that it has "concern" about the 2020 decisions of BLM and NPS in two areas: compliance with Section 810 of ANILCA and compliance with Section 106 of the NHPA. As explained below, both of the statutes impose certain

---

[44] *Prieto v. United States*, 655 F. Supp. 1187, 1194 (D.D.C. 1987).

[45] *See*, *e.g.*, 43 U.S.C. § 1766; *Dan Bradshaw*, 161 IBLA 116, 127-29 (April 7, 2004) (reversing BLM decision terminating right-of-way for failure to follow FLPMA's requirements).

[46] 901 F.3d at 437.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 10

procedural requirements on federal agencies that, in this case, have been satisfied. Therefore, they do not support voluntary remand.

### A.     BLM Complied with Section 810 of ANILCA.

Interior first claims that the agencies may have violated Section 810 of ANILCA by failing to sufficiently discuss certain adverse effects on subsistence resources, namely caribou and salmon.[47] This contention, however, conflicts with the record.

Section 810 of ANILCA is primarily a process statute, similar to NEPA.[48] It does not prohibit adverse impacts to subsistence uses. Rather, it requires federal agencies to evaluate the effect of the proposed use on subsistence uses and resources prior to authorizing the use or disposal of public land.[49] Where the proposed use would "significantly restrict subsistence uses," the federal agency must follow certain notice and hearing requirements, and determine whether "such a significant restriction of subsistence uses is necessary, consistent with sound principles for the utilization of the public lands."[50] In addition, the agency must determine that the proposed use "will involve the minimal amount of public lands necessary to accomplish the purpose of such use" and that "reasonable steps will be taken to minimize adverse impacts" on subsistence uses and resources.[51]

---

[47] Mot. at 14-16.

[48] *See Se. Alaska Conservation Council v. U.S. Forest Serv.*, 443 F. Supp. 3d 995, 1016-17 & n.172 (D. Alaska 2020).

[49] *See* 16 U.S.C. § 3120(a).

[50] *Id.* § 3120(a)(1).

[51] *Id.* § 3120(a)(2)-(3).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG     Page 11
Case 3:20-cv-00253-SLG    Document 124    Filed 03/22/22    Page 13 of 26

Here, BLM (as the lead agency[52]) followed the correct process and had ample information about potential adverse impacts on subsistence uses to make a decision in accordance with ANILCA Section 810.  BLM evaluated potential impacts on subsistence uses and resources early in the review process, and disclosed those impacts the Draft EIS.[53]  BLM determined at that time that the alternatives analyzed in the Draft EIS and their associated cumulative impacts may significantly restrict subsistence uses.[54] Having made that preliminary Tier 1 finding, BLM completed the additional steps set forth in ANILCA prior to authorizing the right-of-way, including giving notice of its determination and holding public hearings in various Alaska Native communities.[55]  As a result of the additional information obtained, the Final EIS contains a more robust analysis of the potential effects on subsistence uses.[56]

Given that there is no dispute that BLM properly completed the process required by ANILCA Section 810 and considered potential impacts on subsistence uses, Interior's

---

[52] Here, the lead agency for NEPA purposes is responsible for ensuring compliance with Section 810 of ANILCA.  43 C.F.R. § 36.6(a)(6).

[53] BLM_0007130-43 (discussion of effects on subsistence uses and resources). In addition, the Draft EIS contains separate sections on the effects of the project on fish and mammals that also discuss subsistence uses.  *Id.*, BLM_0007074-85 (fish and aquatic species, including salmon), BLM_0007090-106 (mammals, including caribou).

[54] BLM_0008037-38.

[55] *Id.*; *see also* BLM_0016004-16 (collaboration and consultation).

[56] *See, e.g.*, BLM_0015578-99 (discussion of effects on subsistence uses and resources), BLM_0016188-411 (Subsistence Technical Report), BLM_0016412-41 (ANILCA Section 810 Final Evaluation).  The Final EIS also contains discussions of the effects of the project on fish (including salmon) and mammals (including caribou). BLM_0015506-22 (fish and aquatic species), BLM_0015528-46 (mammals).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 12
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 14 of 26

arguments amount to improper fly-specking.[57] None of the purported deficiencies justify remand and possible termination of AIDEA's rights-of-way. At most, they are harmless error.[58]

Interior claims that BLM failed to provide an adequate discussion of impacts on caribou forage and the resulting impacts on subsistence uses.[59] The cited discussion in the Final EIS, however, explains that while there would be losses of caribou habitat due to vegetation removal and road constriction, the amount of habitat loss would be extremely small and "would represent no more than 0.005 percent of the 92.2-million-acre WAH [western artic caribou herd] total range."[60] The Final EIS also explained that a Fish and Wildlife Mitigation Plan would be developed and would contain measures to minimize habitat fragmentation on mammals.[61] As the Final EIS discusses, the impacts on caribou vegetation will be limited.

Interior also claims that "dewatering" from "mining operations" was not adequately discussed.[62] This assertion is groundless. The land use permitted by BLM

---

[57] *E.g.*, *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996) ("We apply a rule of reason because courts should not 'fly speck' an EIS and hold it insufficient based on inconsequential or technical deficiencies.").

[58] *WildEarth Guardians v. Provencio*, 923 F.3d 655, 678 (9th Cir. 2019) (stating error was harmless where it had no effect on process); *accord Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1152 (9th Cir. 2002) (concluding that failure to respond to certain comments was harmless because agency had discussed issues raised in comment); *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1488 (9th Cir. 1992).

[59] Mot. at 14.

[60] BLM_0015535.

[61] *Id.*; *see also* BLM_00162442-96 (potential mitigation measures).

[62] Mot. at 15.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 13
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 15 of 26

and NPS is the construction and operation of portions of Ambler Road, not mining operations. At this time, it is unknown whether, when, and how mining may take place in the Ambler Mining District. Section 810 of ANILCA does not require the agencies to speculate about the effects of future activities that are not currently under consideration. Even under NEPA, which has a broader scope of analysis, there must be a specific proposal for an action so that its effects can be meaningfully evaluated.[63] Thus, this concern does not justify reconsidering the right-of-way decisions.

Further, Interior asserts that new information has recently become available on declines in salmon and caribou populations important to subsistence users.[64] Again, this is insufficient to support remand. The new information consists of population estimates from 2021 – a single year. As Commissioner Vincent-Lang explains in his attached declaration, in the environmental review, potential impacts on caribou forage vegetation and any adverse impacts on subsistence uses were sufficiently considered, and Interior's new information does not rise to the level of significance that would justify supplemental review.[65] He explains that caribou populations fluctuate and that the current population of the Western Artic caribou herd is within the range of its historic variability.[66] He also explains that ADF&G has experience in managing caribou populations that occur near

---

[63] *See* 40 C.F.R. § 1508.1(x) (definition of "proposal" for NEPA purposes).

[64] Mot. at 16.

[65] Vincent-Lang Decl. ¶¶ 12-18.

[66] *Id.* at ¶ 16.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 14

roads that carry more traffic than Ambler Road, including the Nelchina caribou herd which has retained a robust population.

Regarding salmon, Commissioner Vincent-Lang explains that yearly variation in salmon populations are known to occur, and were accounted for in the ANILCA Section 810 evaluation and in the broader analysis of impacts in the EIS. As it has in the past, ADF&G will protect against these variable salmon numbers by adjusting harvest rates on an as needed basis.[67] Further, terrestrial projects such as Ambler Road are not causing the recent reductions in salmon numbers.[68] Therefore, there is no new information that would require suspension of permitting or additional environmental or subsistence analyses.[69]

Under NEPA, an EIS may require supplementation when there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action's impacts.[70] However, an agency is not required to "supplement an EIS every time new information comes to light after the EIS is finalized. To require otherwise would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made."[71] In short, a supplemental EIS is required "only if changes, new information, or

---

[67] Vincent-Lang Decl. ¶¶ 19-22.

[68] *Id.* at ¶¶ 20-21.

[69] *Id.* at ¶ 22.

[70] *See* 40 C.F.R. § 1502.9(d)(1).

[71] *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 373 (1989).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                          Page 15
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 17 of 26

circumstances may result in significant environmental impacts 'in a manner not previously evaluated and considered.'"[72]

Given the similarities between NEPA and ANILCA Section 810, the same principles should apply here. The new information cited by Interior is outside the administrative record, limited to a single year, and does not demonstrate a long-term trend or show a significant impact that was overlooked by the agencies, as Commissioner Vincent-Lang explains in his declaration. It does not support remanding the decisions for reconsideration by Interior.

### B. BLM Complied with Section 106 of the NHPA.

Interior's other concern is BLM's compliance with the NHPA. Interior asserts that there are "shortcomings" that "necessitate a remand of the decision to allow a more robust process to precede any future decisions."[73] Once again, however, the alleged shortcoming are largely manufactured and of little actual significance.

Like NEPA and ANILCA Section 810, the NHPA "is a procedural statute requiring government agencies to 'stop, look, and listen' before proceeding with agency action."[74] Its key provision, Section 106, requires federal agencies to consult with various interested parties to identify historic properties in the area affected by a proposed

---

[72] *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1157 (9th Cir. 2008) (quoting *Westlands Water Dist. v. Dep't of Interior*, 376 F.3d 853, 873 (9th Cir. 2004)).

[73] Mot. at 17.

[74] *Te-Moak Tribe of W. Shoshone*, 608 F.3d 592, 610 (9th Cir. 2010); *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 805 (9th Cir. 1999).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 16
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 18 of 26

federal project, assess the effects of the project on those properties, and identify ways to resolve or mitigate any adverse effects. During the Section 106 consultation process, the federal agency must "provide a tribe with 'a reasonable opportunity to identify its concerns about historic properties, advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance, articulate its views on the [proposed action's] effects on such properties, and participate in the resolution of adverse effects.'"[75] But, "the choice whether to approve the undertaking ultimately remains with the agency."[76]

In this case, BLM complied with the consultation requirements imposed by Section 106. Early in the approval process, in 2017, BLM initiated the Section 106 consultation process by inviting 109 Indian tribes, Alaska Native corporations, agencies, and other interested parties to participate in Section 106 consultation on the Ambler Road Project.[77] BLM also conducted a review of potentially affected federally recognized tribes along the proposed road corridors, also identifying those tribes that could be indirectly affected. Based on this review, BLM sent letters to 52 federally recognized tribes, presenting the opportunity for government-to-government consultation on the project, and conducted government-to-government meetings with several tribes about the

---

[75] *Te-Moak Tribe*, 608 F.3d at 608 (quoting 36 C.F.R. § 800.2(c)(2)(ii)(A)).

[76] *Save Our Heritage, Inc. v. Fed. Aviation Admin*., 269 F.3d 49, 62 (1st Cir. 2001)); *see also Narragansett Indian Tribe v. Warwick Sewer Auth.*, 334 F.3d 161, 168 (1st Cir. 2003) (explaining that "there is no tribal veto" under the NHPA).

[77] BLM_000713; BLM_0007559-61 (list of parties invited to participate in the Section 106 process).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 17
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 19 of 26

Section 106 process.  By the time the Draft EIS was issued, 28 state and federal agencies, local governments, and tribal entities had participated in Section 106 consultation with BLM.[78]

The Draft EIS also included an analysis of cultural resources located in the vicinity of each road corridor under consideration.[79]  In connection with this analysis, data was compiled from multiple sources, including recent cultural resources investigations and ethnographic studies within the study area, and the impacts of the construction, operation and maintenance, and reclamation of the road were evaluated. BLM established two areas of potential effects ("APEs"), one for direct effects (generally 250-feet-wide, and in some cases (*e.g.*, water crossings, steep terrain), a 400-feet-wide project corridor plus a 100-foot buffer on both sides of the corridor) and another for indirect and cumulative effects (a one-mile buffer on either side of the APE for direct effects).[80]

BLM also began developing a Section 106 Programmatic Agreement ("PA") in consultation with agencies, tribes, and other interested parties to ensure that historic properties within or near the road corridor are properly identified and any adverse effects of the project are resolved or mitigated.[81]  Notably, the PA would apply to cultural

---

[78] BLM_000712-13.

[79] ACHP's regulations governing Section 106 consultation encourage the coordination of environmental reviews under NEPA and under the NHPA.  *See* 36 C.F.R. § 800.8.

[80] BLM_0007143-148.

[81] BLM_0007013; *see also* 36 C.F.R. § 800.14(b) (authorizing the use of programmatic agreements to resolve adverse effects on historic properties in complex project situations).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                  Page 18
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 20 of 26

resource impacts resulting from all project activities, regardless of landownership, *i.e.*, the entire 200-mile corridor would be included.[82]  A copy of the draft PA was included in the Draft EIS as Appendix J.[83]

In August 2019, BLM provided notice regarding the availability of the Draft EIS, including the draft PA, and sought additional information and public comment.  BLM hosted numerous public meetings on the Draft EIS in September and October, 2019, which included cultural resources issues.  The agency also continued to conduct government-to-government meetings with various Alaska Native villages and councils as well as Section 106 consultation meetings.[84]

In March 2020, BLM issued the Final EIS, including the revised Section 106 PA for addressing impacts to cultural resources, attached as Appendix J.  BLM summarized the extensive efforts made to identify and contact federally recognized tribes that may be affected by the project, notifying them of the NEPA and Section 106 processes, providing periodic updates at multiple stages of review, and conducting meetings at various stages of the process BLM also discussed the development of the Section 106 PA through consultation with various interested entities, who shared information and concerns about impacts to cultural resources.[85]

---

[82] BLM_0007146.

[83] BLM_0007515-68.

[84] BLM_0008037-38; BLM_00160010-14 (App. J, listing meetings, public notices and media articles).

[85] BLM_0015410; *see also* BLM_0015599-604.

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                      Page 19
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 21 of 26

Ultimately, the Section 106 PA was finalized and included as Appendix H to the JROD in July 2020.[86] The PA is extremely detailed and imposes a number of requirements to identify and address project impacts. These include identification of historic properties within the APE; assessment of potential adverse effects to historic properties; and methods for resolution of adverse effects to historic properties through avoidance, minimization, or mitigation measures.[87]

Interior now asserts that BLM failed to engage in "meaningful" consultation by failing to invite participation by tribes.[88] This contention lacks merit. As explained, BLM initiated Section 106 consultation in 2017, inviting more than 100 different entities to participate. BLM determined that a PA would the best approach to comply with Section 106 by allowing for a phased approach as construction of the Ambler Road proceeded, and the agency developed a PA that was subject to public notice and comment through the NEPA process.[89] This approach complied with the NHPA. There is no requirement under Section 106 that BLM, more than two years into the consultation process, continue to send correspondence to parties that had not shown any interest. Consultation is a two-way street.[90] Nor is there any evidence that "tribal requests for information and meetings were frequently rebuffed or responses extremely delayed," as

---

[86] BLM_0016931-7020.

[87] *Id.*; *see also* BLM_0016733 (summarizing requirements imposed by the PA).

[88] Mot. at 18-19.

[89] *See, e.g.*, BLM_00154410 (summarizing Section 106 process).

[90] *See, e.g.*, 36 C.F.R. § 800.8 (a)(1) (explaining that Indian tribes and other consulting parties "who may be concerned with the possible effects of an agency action on historic properties should be prepared to consult with agencies early in the NEPA process").

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 20
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 22 of 26

Interior now asserts.[91]  The best evidence on this point is that Plaintiffs have not asserted a similar argument – they instead argue the scope of the APE is too limited.[92]

Interior also has raised Plaintiffs' argument about the size of the APE, suggesting that it will revisit BLM's determination on remand.[93]  But Interior undercuts its argument by conceding that determining an appropriate APE is highly technical and receives great deference, and no specific reason for revisiting that determination is given in the Motion.[94]  Instead, Interior suggests that development of the APA was "constrained" by the deadlines Congress imposed in ANILCA, implying that on remand, the statutory deadlines will be disregarded.  Obviously, that would be improper.  Regardless, Interior has provided no evidence supporting its assertion.  The approval process substantially exceeded the deadlines imposed in ANILCA, and BLM spent over two years soliciting input on cultural resources during the NEPA process, in addition to various meetings and other communications.  There is no evidence that BLM was unable to develop a reasonable APE.  Therefore, there are no legitimate grounds for remanding the decisions based on Interior's unfounded fears regarding BLM's compliance with NHPA Section 106.

---

[91] Mot. at 18 (quoting *Quechan Tribe of Ft. Yuma Indian Rsrv. v. U.S. Dep't of Interior*, 755 F. Supp. 2d 1104, 1118-19 (S.D. Cal. 2010)).

[92] Plfs. Op. Br., Doc. 99, at 57-60.

[93] Mot. at 19-20.

[94] Mot. at 19 n.15 (citing and quoting *Valley Cmty. Pres. Comm'n v. Mineta*, 373 F.3d 1078, 1091 (10th Cir. 2004)).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 21
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 23 of 26

## C.     No Reason Is Given for Supplementing the EIS.

Interior's Motion includes two cryptic references to supplementing BLM's NEPA analysis on remand, but it provides no reason for doing so, and tellingly NEPA is not mentioned by the Deputy Secretary.[95]  As explained, the NEPA process was thorough and complied with all procedural requirements.  The Final EIS is well over 1,000 pages and is the result of a comprehensive process that ultimately took significantly longer than Congress envisioned when it authorized Ambler Road's construction.  Therefore, remand for the purpose of supplementing the Final EIS would be improper.

## IV.    CONCLUSION AND RELIEF REQUESTED.

Interior has not provided a legitimate factual or legal basis for remanding the decisions of its agencies and reconsidering them.  Indeed, Interior's failure to develop any legitimate reason for voluntary remand reveals that it is a bad faith attempt to effectuate a change in administrative policy, like the voluntary remand rejected in *Lutheran Church-Missouri Synod v. F.C.C.*[96]  Therefore, the Motion should be denied.

If the Court is nevertheless inclined to grant the motion, the Court should limit the scope of remand to the specific concerns identified in the Motion and which the Court finds valid and supported by the record, and impose a strict deadline for the completion of reconsideration consistent with the deadlines imposed under ANILCA.  The State believes that no more than 90 days should be necessary, given the extensive record

---

[95] *See* Mot. at 2, 21.

[96] 141 F.3d 344, 349 (D.C. Cir. 1998) (rejecting "last second motion to remand" because it was based on agency's "policy statement" made after administrative challenge began).

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                                    Page 22
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 24 of 26

already in existence and BLM's on-going government-to-government discussions with Alaska Native entities. The State also asks that the Court retain jurisdiction over the pending lawsuits to ensure the timely completion of the reconsideration.

Finally, in light of the limited scope of the issues identified by Interior in the Motion and supporting declaration, there is no basis to set aside AIDEA's permits or to restrict AIDEA's preliminary efforts to construct the Ambler Road. The rights-of-way issued to AIDEA in 2020 should remain effective to minimize prejudice to AIDEA during any period of reconsideration.

DATED: March 22, 2022.

TREG R. TAYLOR
ATTORNEY GENERAL


By:___/s/ Ronald W. Opsahl_____
Ronald W. Opsahl (Alaska Bar No. 2108081)
Senior Assistant Attorney General
Brian E. Gregg (Alaska Bar No. 2107080)
Assistant Attorney General
Alaska Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 269-5100
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov
        brian.opsahl@alaska.gov

Attorneys for State of Alaska

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                    Page 23
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 25 of 26

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify that this memorandum complies with the type-volume limitation of Local Civil Rule 7.4(a)(2), because this memorandum contains 5,699 words, excluding parts exempted by Local Civil Rule 7.4(a)(4). This memorandum has been prepared in proportionately spaced typeface, Times New Roman 13-point font, and I obtained the word count using Microsoft Word as installed on our computer system.

By:    /s/ Ronald W. Opsahl
Ronald W. Opsahl (Alaska Bar No. 2108081)
Senior Assistant Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2022, I caused copies of the foregoing STATE OF ALASKA'S OPPOSITION TO DEPARTMENT OF INTERIOR'S MOTION FOR VOLUNTARY REMAND to be served by electronic means on all counsel of record by using the Court's CM/ECF system.

/s/ Leilani J. Tufaga
Leilani J. Tufaga
Law Office Assistant II

State of Alaska's Opposition to Department of Interior's Motion For Voluntary Remand
*Alatna Village Council v. Heinlein*, 3:20-cv-00253-SLG                              Page 24
Case 3:20-cv-00253-SLG   Document 124   Filed 03/22/22   Page 26 of 26