Teresa B. Clemmer (AK Bar No. 0111059)
CLEMMER LAW OFFICE LLC
PO Box 4086
Palmer, AK 99645
Phone: 907-982-2774
tclemmer@clemmerlaw.net

*Counsel for Plaintiffs Alatna Village Council, Allakaket Tribal Council, Evansville Tribal Council, Huslia Tribal Council, Tanana Tribal Council, and Tanana Chiefs Conference*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALATNA VILLAGE COUNCIL, *et al.*,<br><br>               Plaintiffs,<br>  v.<br><br>THOMAS HEINLEIN, in his official capacity, *et al.*,<br>               Defendants,<br>  and<br><br>AMBLER METALS, LLC, *et al.*,<br><br>            Intervenor-Defendants. | Case No. 3:20-cv-00253-SLG |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR VOLUNTARY REMAND

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................. 2

        A.      PARTIAL RECONSIDERATION PROPOSED BY DOI .......................... 2

        B.      ABSENCE OF ANY COMMITMENT FOR ACTION BY CORPS ............ 6

        C.      ONGOING HARM FROM INDUSTRIAL ACTIVITIES ......................... 7

III.    LEGAL STANDARDS ........................................................................ 11

IV.     ARGUMENT ...................................................................................... 15

        A.      DOI'S PROPOSAL DOES NOT SATISFY THE STANDARDS FOR REMAND
                WITHOUT VACATUR. ................................................................... 15

                1.      Partial Reconsideration Does Not Meet the Minimum Threshold
                        Requirement That Key Issues Will Be Addressed. ........................ 15

                2.      Defendants' Legal Errors Are Serious and Fundamental. .............. 16

                3.      Judicial Economy Would Not Be Served by DOI's Proposal for
                        Partial Reconsideration and the Resulting Piecemeal Litigation. ..... 19

                4.      Remand Without Vacatur Would Allow Irreversible Harm to
                        Subsistence, Cultural Resources, and the Environment. ................. 20

                5.      Remand Without Vacatur Would Severely Prejudice Plaintiffs. ..... 24

                6.      Any Prejudice to Defendants and Intervenors Would Not Be
                        Significant Enough to Warrant Remand Without Vacatur. ............. 26

        B.      REQUEST FOR RELIEF .................................................................. 27

V.      CONCLUSION ................................................................................... 28

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG

# I.    INTRODUCTION

Alaska Native people have thrived in the magnificent foothills and river valleys south of the Brooks Range for thousands of years, and they depend on the integrity of the natural environment to sustain their traditional indigenous culture and way of life.[1]  The Ambler Road project is intended to facilitate industrial hard-rock mining development throughout their traditional homelands, including several large-scale mines, hundreds of smaller mines, and secondary access roads sprawling out along the 211-mile road corridor.[2]  This network of mines and roads would have severe consequences for Athabascan and Iñupiat communities, the fish, wildlife, and waters they depend on, and the cultural resources they hold sacred.[3]

Defendants have admitted some legal errors in their decisions approving the Ambler Road project, and they are now seeking remand without vacatur while they reconsider those issues.  Since a partial reconsideration would leave many of Plaintiffs' claims unaddressed and since harmful on-the-ground activities would continue while the reconsideration is carried out, Plaintiffs respectfully urge the Court to deny the motion and either allow the parties to complete merits briefing as to the remaining disputed issues or vacate the agencies' admittedly unlawful decisions.

---

[1] ECF 99, at 12-14; ECF 99-1; ECF 99-2.
[2] *Id*. at 14-18.
[3] ECF 99, at 14-18.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          1

## II.    FACTUAL BACKGROUND

Defendants have issued several reviews and decisions concerning the Ambler Road project, including an environmental impact statement ("EIS"), two joint records of decision ("RODs"), a subsistence evaluation under Section 810 of the Alaska National Interest Lands Conservation Act ("ANILCA"), a programmatic agreement ("PA") under Section 106 of the National Historic Preservation Act ("NHPA"), a dredge-and-fill permit encompassing the entire road corridor under Section 404 of the Clean Water Act ("CWA"), long-term rights-of-way on lands managed by the U.S. Bureau of Land Management ("BLM") and National Park Service ("NPS"), and various authorizations for on-the-ground field work.[4]

In the pending motion for voluntary remand, Defendants have acknowledged that the U.S. Department of the Interior ("DOI") decisions are legally deficient in certain ways, and they are requesting a remand without vacatur while they reconsider these issues.[5]  Defendants' motion does not provide a timeline for DOI's partial reconsideration, acknowledge any legal violations by the U.S. Army Corps of Engineers ("Corps"), or indicate what will happen with respect to Plaintiffs' other legal challenges.

### A.    PARTIAL RECONSIDERATION PROPOSED BY DOI

DOI admits the ANILCA § 810 subsistence evaluation is "deficient" because it

---

[4] ECF 99, at 18-29.
[5] ECF 111; ECF 111-1.

lacks adequate discussion of (1) "impacts on caribou forage vegetation and the resultant adverse impacts on subsistence" and (2) "water impacts that would occur in connection with construction and operation of the Road … and the impacts of such activities on salmon, sheefish, and other fish species; spawning areas, and other aquatic habitat; and related subsistence uses."[6] DOI intends to reconsider these issues as part of its voluntary remand.[7]

DOI has expressed no intention to reconsider any other aspects of the ANILCA § 810 process challenged by Plaintiffs though. In particular, DOI has made no commitment to address Plaintiffs' claims that Defendants violated ANILCA § 810 by: (1) failing to evaluate public access and resultant impacts on subsistence, (2) excluding 26 subsistence communities from the Tier 1 evaluation, (3) excluding another 7 subsistence communities from the Tier 2 hearings and determinations, (4) erroneously determining that adverse impacts on subsistence are "necessary," (5) erroneously determining that the project would involve the "minimal" amount of public lands, and (6) failing to approve any subsistence evaluation or make the required determinations with respect to NPS lands.[8]

With respect to item 1, DOI is affirmatively denying any legal deficiency by

---

[6] ECF 111, at 2, 14-15; ECF 111-1, at 3. DOI has also expressed an intention to consider new information regarding declines in salmon and caribou populations. ECF 111, at 16-17; ECF 111-1, at 3.
[7] ECF 111, at 17; ECF 111-1, at 3, 4-5.
[8] ECF 99, at 32-40, 47-64.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          3

describing the proposed Amber Road as a "controlled-access industrial access road" that is "limited to mining or commercial uses."[9]  This echoes language the agencies used throughout the decisionmaking process, and it perpetuates their unlawful refusal to evaluate public access as a reasonably foreseeable eventuality.[10]  DOI is thus making clear that it will not revisit this issue as part of its proposed voluntary reconsideration.

Similarly, regarding item 6, DOI is affirmatively denying any legal deficiency by stating that "BLM and NPS jointly engaged in the ANILCA Section 810 process, with BLM serving as the primary author."[11]  DOI is expressing its erroneous view that NPS has satisfied its obligation merely by coordinating with BLM and indicating it has no intention of addressing this issue as part of any voluntary reconsideration.  NPS has an independent obligation to comply with ANILCA § 810 with respect to NPS lands, and Plaintiffs contend they have failed to comply with this obligation.[12]

Along with the two admitted legal defects relating to subsistence described above, DOI admits the cultural resource review process under NHPA § 106 was "deficient" and "did not comply with the NHPA" because the agency's "priority of achieving a PA within the Project's shortened timeframe constrained the options for tribal consultation."[13]  Defendants intend to "revisit their consultation obligations" toward

---

[9] ECF 111, at 6-7.  *See* ECF 111-1, at 2.
[10] ECF 99, at 21, 28-29, 31-32, 47-54, 80-81.
[11] ECF 111, at 6-7; ECF 111-1, at 3.  *See* ECF 111, at 8 n.8.
[12] ECF 99, at 34-35, 54, 61-64.
[13] ECF 111, at 2, 20; ECF 111-1, at 4.

Tribes, including whether Tribes should be signatories to the PA.[14]  DOI has not

acknowledged any legal violation with respect to the "area of potential effect" ("APE")

but would include this issue in its reconsideration.[15]

Unlike the specific topics DOI has agreed to address under ANILCA § 810 and

NHPA § 106, the language describing the scope of DOI's reconsideration under NEPA is

ambiguous and noncommittal.  DOI vaguely indicates it will "supplement[] its NEPA

analysis" to "more thoroughly assess the impacts and resources identified as areas of

concern in this litigation."[16]  Plaintiffs' opening brief focuses on two NEPA violations:

(1) failure to analyze adverse impacts on cultural resources, and (2) failure to analyze

adverse impacts resulting from public access.[17]  As to item 1, unlike the procedural issues

DOI has agreed to revisit under NHPA § 106, remedying the egregiously inadequate

consideration of cultural resources under NEPA would require a substantial commitment

of time and resources.  DOI would need to gather archaeological and ethnographic

baseline data and evaluate adverse impacts over broad areas of land that remain largely

unstudied, despite the project having been under consideration for many years.[18]  DOI

has not demonstrated that it intends to address this gaping hole in its NEPA analysis.

Regarding item 2, DOI's failure to evaluate public access is another enormous gap in the

---

[14] ECF 111, at 20; ECF 111-1, at 4.
[15] ECF 111, at 19-20 n.15.
[16] ECF 111, at 21; ECF 111-1, at 4.  *See* ECF 111, at 2, 24.
[17] ECF 99, at 71-81.
[18] ECF 99, at 14-15, 18-19, 73-80.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          5

EIS. As discussed above, DOI is reaffirming its untenable position that public access is not reasonably foreseeable and does not need to be evaluated.

DOI also has not committed to addressing Plaintiffs' claim relating to Casey Hammond's unlawful and unconstitutional exercise of the authority of the Assistant Secretary for Land and Minerals Management in approving the Joint BLM-Corps ROD and the attached subsistence evaluation and PA.[19] DOI has merely indicated that, after reconsideration, it will "determine ... whether to affirm, amend, or terminate the right-of-way permits."[20]

### B. ABSENCE OF ANY COMMITMENT FOR ACTION BY CORPS

The pending motion may appear to have been filed on behalf of all Defendants, but it is only DOI and its subsidiary agencies that are actually pursuing remand. The Corps merely indicated in a footnote that it "will consider what action is needed ... in light of the Court's ruling on this motion" and "will follow the process outlined in its regulations."[21]

Plaintiffs contend the Corps violated the CWA and implementing regulations by approving a 404 permit for the Ambler Road project: (1) without demonstrating it will not cause "significant degradation" of waters and wetlands, (2) without sufficient

---

[19] ECF 99, at 81-87.
[20] ECF 111, at 3, 22.
[21] ECF 111, at 3 n.1. *See also id.* at 6, 8-9, 18 n.13 (mentioning Corps in procedural history).

information demonstrating compliance with regulatory guidelines, and (3) without adequate mitigation.[22]  Offering only the scant information in the footnote referenced above, the Corps has failed to admit any of these legal violations, failed to commit to any additional review of these issues, and failed to suspend its permit during any such review.

## C.  ONGOING HARM FROM INDUSTRIAL ACTIVITIES

After filing its motion, DOI suspended the rights-of-way across BLM and NPS lands,[23] but for several reasons, this does not come anywhere near "defer[ring] any further project activity until remand and reconsideration are completed," "protect[ing] against any risk of environmental harm,"  or "preserv[ing] the environmental status quo," as Defendants contend.[24]  First, the suspensions acknowledge that ground-disturbing activities could still occur on BLM and NPS lands under special use permits and other authorizations.[25]  Second, three-quarters of the Ambler roadway consist of State and private lands, which are not affected by the right-of-way suspensions.[26]

---

[22] ECF 98; ECF 99, at 21, 88; ECF 102 (authorizing incorporation by reference of factual background and CWA claims); *NAEC v. Haaland*, Pls. Opening Br., 3:20-cv-00187-SLG, ECF 99, at 9-15, 35-54 (Dec. 1, 2021).
[23] ECF 122; ECF 122-1 and -2.
[24] ECF 111, at 21-22, 23; ECF 111-1, at 5.
[25] ECF 122-1 (suspension of BLM right-of-way "does not preclude AIDEA from conducting … activities on the lands subject to the ROW grant pursuant to applicable law or authority other than the suspended grant"); ECF 122-2 (suspension of NPS right-of-way "does not preclude AIDEA from applying for special use permits to conduct activities on the lands subject to the ROW permit pursuant to applicable law or authority other than the suspended permit").
[26] ECF 99, at 50-52.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          7

Third, the CWA § 404 permit remains in effect, and it authorizes dredge-and-fill activities along the entire 211-mile road corridor, including dozens of river crossings, thousands of stream crossings, and thousands of acres of wetlands.[27]  More specifically, the Corps permit authorizes the discharge of over 8.4 million cubic yards of fill material into more than 1,400 acres of wetlands and adverse impacts on more than 250,000 linear feet (47 miles) of stream channels.[28]  Extensive dredge-and-fill activities could therefore take place at rivers, streams, and wetlands on State and private lands not subject to the federal right-of-way suspensions.  Further, the 404 permit in combination with special use permits may be considered "authority other" than the suspended rights-of-way and allow dredge-and-fill activities on federal lands despite the suspensions.[29]

Fourth, the NHPA § 106 process and PA remain in effect, despite their admitted illegality, and Defendants are still considering field work for 2022 under these authorities notwithstanding Plaintiffs' request for the cessation of such reviews.[30]  As currently proposed, the 2022 field work would include vegetation clearing and site preparation at numerous bridge sites, gravel sites, work camps, and helicopter landing zones.[31]  It would also include extensive geotechnical drilling along the entire roadway corridor, with up to

---

[27] *Id*. at 15, 16, 19, 25, 26.
[28] ACE_0022593-96.
[29] *Supra* note 25.
[30] Ex. 1.
[31] Ex. 2, at 3-4, 18-20.  The original document from which this exhibit was excerpted and redacted is marked "confidential" to protect sensitive cultural resource information.  No such information is included in the exhibit.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          8

415 boreholes ranging from 30 to 150 feet deep,[32] as well as tracked vehicles, drill rigs, caravans of heavy equipment dragged across remote lands, fuel transport, storage, and distribution, and field camps of up to 24 personnel.[33]  Compliance with NHPA § 106 and PA requirements is a condition of the CWA § 404 permit,[34] and thus DOI's continuing implementation of the unlawful PA helps facilitate dredge-and-fill activities on State and private lands.  Defendants' determination that activities satisfy NHPA § 106 and PA requirements in combination with special use permits could also be considered "authority other" than the suspended rights-of-way,[35] allowing such activities to proceed on federal lands despite the suspensions.

Fifth, there is no indication the Alaska Department of Natural Resources ("DNR") will stop issuing permits for Ambler-related field work just because the BLM and NPS rights-of-way have been suspended.  DNR recently issued a permit authorizing extensive geotechnical drilling, camp-building, overland transport, and seismic surveying activities to take place along State lands along the John, Wild, and Koyukuk rivers near Evansville this spring.[36]  This permit became effective as of March 4, 2022, and it will remain in place for the next five years.[37]

---

[32] *Id.* at 15.
[33] *Id.* at 5-20.
[34] ACE_0022607; BLM_0016928-29.
[35] *Supra* note 25.
[36] ECF 113, at 1-3; ECF 113-1 through -3.
[37] ECF 113-1, at 1.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          9

Case 3:20-cv-00253-SLG   Document 128   Filed 03/22/22   Page 11 of 32

DNR is also considering authorizations affecting a much broader area, including a proposed long-term easement and site-specific land use plan for the 125 miles and 244,000 acres of the proposed Ambler Road corridor that will traverse State lands.[38] Instead of thoroughly evaluating impacts, DNR is relying on the federal reviews and decisions that Plaintiffs are challenging in this litigation.[39] The public comment period is scheduled to end on April 1, 2022,[40] and DNR could approve the easement and land use plan any time thereafter. DNR's approval would allow many types of ground-disturbing activities, such as vegetation clearing, earth-moving, rock blasting, camp construction, and others.[41]

Finally, even while acknowledging the BLM and NPS right-of-way suspensions,[42] Intervenors AIDEA and Ambler Metals recently confirmed they will still be proceeding with extensive geotechnical drilling and other ground-disturbing field work in 2022, including planned "[b]orings at 45 river crossings, 11 material sites and 10 roadway sites along alignment" and both "[s]ummer and winter activities."[43] This is consistent with the continuing effectiveness of the NHPA § 106 process, PA, and Corps permit, as well as ongoing DNR decisionmaking.

---

[38] ECF 113, at 3-4; ECF 113-1 through -8.
[39] ECF 113, at 4; ECF 113-4, at 2-5; ECF 113-5, at 1-5; ECF 113-6, at 5-7; ECF 113-8, at 1-3.
[40] ECF 113-8, at 2.
[41] ECF 113; ECF 113-1 through -8.
[42] Ex. 3, at 3.
[43] Ex. 3, at 2.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          10

## III. LEGAL STANDARDS

Vacatur is the presumptive remedy when a federal agency decision is legally deficient. If the decision "is not sustainable on the administrative record made, then the … decision must be vacated and the matter remanded for … further consideration."[44] This principle applies with particular force in cases, such as this one, brought under the Administrative Procedure Act ("APA"), which mandates that a reviewing court must "hold unlawful and set aside agency action" that is arbitrary, capricious, or otherwise unlawful.[45]

The Ninth Circuit allows deviation from this rule only in "rare circumstances"[46] or "limited circumstances."[47] A fundamental prerequisite for voluntary remand is that the

---

[44] *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976) (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (citation omitted)).

[45] 5 U.S.C. § 706(2). *See CBD v. Bernhardt*, 982 F.3d 723, 751 (9th Cir. 2020) (vacating approval of oil drilling project when agency decision violated APA, NEPA, and Endangered Species Act); *Alliance Wild Rockies v. USFS*, 907 F.3d 1105, 1121–22 (9th Cir. 2018) (explaining "vacatur of an unlawful agency action normally accompanies remand" and directing lower court to vacate ROD due to APA and National Forest Management Act violations); *Alsea Valley Alliance. v. U.S. Dept. Commerce*, 358 F.3d 1181, 1185-86 (9th Cir. 2004) (citing APA cases for proposition that "vacatur of an unlawful agency rule normally accompanies a remand"); *SEACC v. USFS*, 468 F. Supp. 3d 1148, 1150-56 (D. Alaska 2020) (describing vacatur as the "normal remedy" in APA cases and vacating a flawed EIS along with ROD); *Friends Alaska Natl. Wildlife Refuges v. Bernhardt*, 463 F. Supp. 3d 1011, 1026-27 (D. Alaska 2020) (describing vacatur as the "presumptive remedy under the APA" and vacating a land exchange agreement that violated APA and ANILCA).

[46] *Humane Society v. Locke*, 626 F.3d 1040, 1053 (9th Cir. 2010).

[47] *National Family Farm Coal. v. EPA*, 960 F.3d 1120, 1144 (9th Cir. 2020); *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015).

acknowledged illegalities and/or disputed issues will be addressed on remand.[48]  Indeed, "agency reconsideration of the action under review is part and parcel of a voluntary remand."[49]  A voluntary remand request "may be granted only when the agency intends to take further action with respect to the original agency decision on review."[50]  Otherwise, such a remand "may instead function … as a dismissal of a party's claims."[51]  Where an agency has not committed to review key issues at stake in the litigation, a request for remand is "essentially promoting a meaningless remand" and inviting the plaintiffs to a "party with no cake."[52]

Additionally, an invalid decision can only be left in place during remand "[w]hen equity demands" that unusual result.[53]  When determining whether to leave an illegal agency decision in place, courts balance the "seriousness of the agency's errors" against the "disruptive consequences" of vacatur.[54]  The seriousness inquiry sheds light on the

---

[48] *See Center Food Safety v. Wheeler*, Order, App. Nos. 19-72109, -72280 (9th Cir., Jan. 12, 2021) (denying EPA motion for remand without vacatur in response to petitioners' opposition brief, App. Nos. 19-72109, -72280 (9th Cir., Dec. 7, 2020)); *Lutheran Church v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998); *American Waterways Opers. v. Wheeler*, 427 F. Supp. 3d 95, 98-99 (D.D.C. 2019).

[49] *Limnia Inc. v. U.S. Dept. Energy*, 857 F.3d 379, 386-87 (D.C. Cir. 2017).  *See American Waterways*, 427 F. Supp. 3d at 98-99 (agency's "professed intent to revisit the challenged decision is a necessary condition to obtain remand").

[50] *Limnia*, 857 F.3d at 386 (emphasis omitted).

[51] *Id.*

[52] *Skagit County Pub. Hosp. v. Shalala*, 80 F.3d 379, 384 (9th Cir. 1996).

[53] *Alliance*, 907 F.3d at 1121.  *Accord Pollinator*, 806 F.3d at 532; *SEACC*, 468 F. Supp. 3d at 1150; *Friends*, 463 F. Supp. 3d at 1011.

[54] *National Family*, 960 F. 3d at 1144 (quotation omitted).  *Accord Pollinator,* 806 F.3d at 532; *SEACC*, 468 F. Supp. 3d at 1150; *Friends*, 463 F. Supp. 3d at 1026-27.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          12

"extent of doubt" as to "whether the agency chose correctly."[55]  Courts consider whether "fundamental flaws" in the agency's decision make it unlikely the same decision would be made on remand.[56]  As to disruptive consequences, courts consider the "extent to which either vacating or leaving the decision in place would risk environmental harm,"[57] as well as judicial economy,[58] potential prejudice to the parties,[59] and whether the motion is frivolous or made in bad faith.[60]

All the federal statutes at issue here emphasize the importance of carefully considering impacts before decisions are made.  Only after a federal agency has complied with ANILCA § 810's procedural and substantive requirements regarding subsistence is it authorized to "manage or dispose of public lands" for other purposes.[61]  Under NHPA § 106, "prior to the approval of the expenditure of any Federal funds" and "prior to the issuance of any license," an agency must "take into account the effect of the undertaking on any historic property,"[62] including properties of "religious and cultural significance"

[55] *North Carolina v. EPA*, 531 F.3d 896, 929 (9th Cir. 2008) (quotation omitted).
[56] *National Family*, 960 F. 3d at 1144-45 (citing *Pollinator*, 806 F.3d at 532); *North Carolina*, 531 F.3d at 929.
[57] *National Family*, 960 F. 3d at 1144-45 (citing *Pollinator*, 806 F.3d at 532).
[58] *See Utility Solid Waste Activs. Group v. EPA*, 901 F.3d 414, 436-37 (D.C. Cir. 2018); *American Waterways Opers. v. Wheeler*, 507 F. Supp. 3d 47, 57-58 (D.D.C. 2020).
[59] *See Utility*, 901 F.3d at 436; *American Waterways*, 427 F. Supp. 3d at 98-100.
[60] *Utility*, 901 F.3d at 436.
[61] 16 U.S.C. § 3120(d).  *See Amoco Prod. Co. v. Vill. Gambell*, 480 U.S. 531, 554 (1987) (actions that would "significantly restrict subsistence uses" only allowed after agency demonstrates such actions are "necessary" and "adverse effects are minimized").
[62] 54 U.S.C. § 306108.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          13

Case 3:20-cv-00253-SLG   Document 128   Filed 03/22/22   Page 15 of 32

to a Tribe.[63]  This is a "stop, look, and listen" provision requiring agencies to consider the effects of their decisions on historic properties up front.[64]  Before issuing permits for the discharge of dredged-or-fill material, the Corps must demonstrate that the proposed discharge will not have an "unacceptable adverse impact" nor cause "significant degradation" of waters and wetlands, and that "appropriate and practicable steps" will minimize adverse impacts, including compensatory mitigation for any unavoidable impacts.[65]

NEPA is likewise meant to "ensure that environmental information is available to public officials and citizens before decisions are made and before actions are taken."[66] NEPA must not be used to "rationalize or justify decisions already made."[67]  The

---

[63] 54 U.S.C. § 302706(b); 36 C.F.R. § 800.2(c)(2)(ii).
[64] *Muckleshoot Indian Tribe v. USFS*, 177 F.3d 800, 805 (9th Cir. 1999) (citation omitted).
[65] 40 C.F.R. §§ 230.1(c),(d), 230.12(a)(3), 230.93(a)(1).  *See generally* 33 U.S.C. 1344(b)(1); 40 C.F.R. pt. 230.
[66] 40 C.F.R. § 1500.1(b) (NEPA regulations in effect before September 2020 are applicable here; ECF 99, at 20 n.36).  *See Ilioulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1093 (9th Cir. 2006) (agencies must "carefully weigh environmental considerations … before the government launches any major federal action") (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005)); *California v. Norton*, 311 F.3d 1162, 1168 (9th Cir. 2002) (agencies must "prepare an EIS ... before committing resources to an action").
[67] 40 C.F.R. § 1502.5.  *See Metcalf v. Daley*, 214 F.3d 1135, 1142 (9th Cir. 2000) ("hard look" under NEPA "must be taken objectively and in good faith … and not as a subterfuge designed to rationalize a decision already made"); *Envtl. Def. Fund, Inc. v. Corps*, 470 F.2d 289, 298 (8th Cir. 1972) (agencies must "give effect to the environmental goals set forth" in NEPA and not just "file detailed impact studies which will fill governmental archives").

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          14

Case 3:20-cv-00253-SLG   Document 128   Filed 03/22/22   Page 16 of 32

"appropriate time for preparing an EIS is prior to a decision, when the decisionmaker retains a maximum range of options."[68] "Once large bureaucracies are committed to a course of action, it is difficult to change that course—even if new, or more thorough, NEPA statements are prepared."[69] "After major investment of both time and money, it is likely that more environmental harm will be tolerated."[70] Where an EIS was "premised on the notion that the leases were valid and granted development rights," no matter how "lengthy and exhaustive" the analysis was, the court held the agencies had failed to take the requisite "hard look" at whether the area "should be developed for energy at all."[71]

## IV. ARGUMENT

### A. DOI's PROPOSAL DOES NOT SATISFY THE STANDARDS FOR REMAND WITHOUT VACATUR.

#### 1. Partial Reconsideration Does Not Meet the Minimum Threshold Requirement That Key Issues Will Be Addressed.

Defendants' proposal to conduct a partial reconsideration involving only a few of Plaintiffs' claims fails to satisfy the most basic requirement for remand without vacatur— that the key issues will be revisited.

---

[68] *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983) (citing *Envtl. Def. Fund v. Andrus*, 596 F.2d 848, 852-53 (9th Cir. 1979) and *Port of Astoria v. Hodel*, 595 F.2d 467, 478 (9th Cir.1979)). *Accord Pit River Tribe v. USFS*, 469 F.3d 768, 785 (9th Cir. 2006); *Conner v. Burford,* 848 F.2d 1441, 1446 (9th Cir. 1988).
[69] *Massachusetts v. Watt*, 716 F.2d 946, 952–53 (1st Cir. 1983).
[70] *Pit River*, 469 F.3d at 785-86 (quoting *Save the Yaak Comm. v. Block*, 840 F.2d 714, 718 (9th Cir. 1988). *Accord Confed. Tribes v. FERC*, 746 F.2d 466, 471-72 (9th Cir. 1984), *cert. denied* 471 U.S. 1116 (1985); *Envtl. Def.*, 596 F.2d at 853.
[71] *Pit River*, 469 F.3d at 787.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          15

In *Center*, the Ninth Circuit denied remand without vacatur where EPA only planned to address violations under one statute and had not committed to addressing claims under another.[72]  Other courts have likewise refused to allow voluntary remand where agencies did not commit to addressing the main issues in dispute.[73]  Similarly here, DOI proposes to address a few issues arising under ANILCA and NHPA, and possibly some unspecified issues arising under NEPA.  DOI is ignoring Plaintiffs' many other claims, and it has affirmatively indicated it will not be addressing some of them.  Even worse, the Corps has not committed to reconsidering any of Plaintiffs' claims under the CWA at all.

## 2.    Defendants' Legal Errors Are Serious and Fundamental.

Defendants' admittedly illegal reviews and decisions should not be left in place during a voluntary remand because the agencies' errors are "serious" and constitute "fundamental flaws," making it unlikely the same decisions would be made after reconsideration.

In *National Family*, EPA and Monsanto asked the court to remand without

---

[72] *See Center*, Order, App. Nos. 19-72109, -72280.
[73] *See Limnia*, 857 F.3d at 386 (rejecting remand and allowing case to proceed because agency decision and court order "did not return the 'core dispute' … back for further proceedings by the agency"); *Lutheran Church*, 141 F.3d at 349 (denying remand where agency had not confessed error, offered only a prospective policy statement, and had not committed to addressing plaintiffs' claims); *American Waterways*, 427 F. Supp. 3d at 98-99 (agency's "professed intent to revisit the challenged decision is a necessary condition to obtain remand").

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          16

vacatur, leaving in place unlawful approvals for toxic herbicides during EPA's reconsideration. The Ninth Circuit declined to do so because EPA had made "multiple errors," "substantially understated the risks it acknowledged," and "entirely failed to acknowledge other risks."[74] The court found these amounted to fundamental flaws substantial enough that it was unlikely the same decision would be adopted after reconsideration.[75] In *Pollinator*, the Ninth Circuit denied a request for remand without vacatur in part because EPA would be required to "obtain further studies and data regarding the effects" of a pesticide highly toxic to honey bees, and this meant a "different result may be reached" after reconsideration.[76]

The same considerations weigh against remand without vacatur here. Defendants' review processes and decisions approving the Ambler Road project involved multiple errors serious and fundamental enough to warrant vacatur. The three legal errors admitted by Defendants go to the heart of the subsistence, cultural resource, and environmental consequences of the Ambler Road project and associated mining activities that Defendants were required to carefully consider:

- Failure to adequately consider harm to caribou forage vegetation and resultant impacts on subsistence;
- Inadequate Tribal consultation concerning cultural resources; and
- Failure to adequately consider water impacts and resulting harm to fish, aquatic habitat, and subsistence.[77]

---

[74] *National Family*, 960 F.3d at 1145.
[75] *See id.*
[76] *Pollinator*, 806 F.3d at 532.
[77] *Supra* Part II.A.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          17

Case 3:20-cv-00253-SLG   Document 128   Filed 03/22/22   Page 19 of 32

Plaintiffs' other challenges also address serious and fundamental flaws in Defendants'

decisionmaking, including without limitation:

- Exclusion of 33 subsistence communities from one or both phases of the subsistence evaluation;
- Refusal to consider impacts from reasonably foreseeable public access in either the EIS or subsistence evaluation;
- Erroneous determinations regarding the necessity of subsistence impacts and minimization of public land usage;
- Failure to comply with subsistence evaluation requirements for NPS lands;
- Unduly narrow geographic scope of APE;
- Failure to gather adequate archaeological and ethnographic baseline data and evaluate cultural resource impacts;
- Unlawful and unconstitutional project approval by Casey Hammond;
- Failure to demonstrate the project will not degrade waters and wetlands;
- Failure to demonstrate compliance with regulatory guidelines for Corps permitting; and
- Failure to ensure adequate mitigation of water and wetland impacts.[78]

As in *National Family*, Defendants' legal violations resulted in a substantial

understatement of some risks and a complete failure to acknowledge others.[79]  Correcting

these problems will require extensive additional information-gathering and evaluation of

impacts, as in *Pollinator*.  Defendants have acknowledged that, even after the limited

reconsideration they are proposing, a different outcome may result.[80]  If the flawed

decisions were vacated and legal errors fully corrected, it is highly unlikely the decisions

would remain the same.  Instead, new decisions compliant with applicable substantive

---

[78] *Supra* Parts II.A-B.
[79] *See generally* ECF 99.
[80] ECF 111, at 3, 22.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          18

and procedural requirements would likely include substantial changes to the project design, routing, alternatives, mitigation, and other aspects.

### 3. Judicial Economy Would Not Be Served by Partial Reconsideration and the Resulting Piecemeal Litigation.

Partial reconsideration would not serve the interest of judicial economy because it would bifurcate and complicate the litigation, making it more burdensome on the Court and the parties, not less so.

In some cases, a voluntary remand may have the benefit of allowing agencies to "cure their own mistakes."[81]  Such a benefit is not present here, however, because DOI's proposal for a partial reconsideration would result in piecemeal litigation and the few issues that would be addressed are intertwined with many other issues that should be considered together.

In *American Waterways*, for instance, even though EPA had admitted legal error the court declined to grant its motion for voluntary remand.  The court explained that it

> … ha[d] before it hundreds of pages of briefing on cross-motions for summary judgment that … squarely present issues that go beyond EPA's failure to consider costs.  If the court were to remand to EPA for a determination of costs, EPA would lack guidance on the validity of … other challenges, and the parties potentially could be mired in piecemeal litigation … for years to come. No one benefits from such an approach.[82]

Similarly, here, the Court has before it hundreds of pages of briefing on the merits of

---

[81] *Utility,* 901 F.3d at 436 (quotation omitted).  *See American Waterways*, 507 F. Supp. 3d at 57-58.
[82] *American Waterways*, 507 F. Supp. 3d at 57-58.

Plaintiffs' claims in the two parallel cases.[83]  This briefing squarely presents many issues that go far beyond the few legal errors DOI has admitted, as well as many issues relating to Corps permitting.  A voluntary remand for partial reconsideration would leave the agencies without guidance on numerous disputed issues, necessitating a return to this Court for further litigation.[84]  Such piecemeal litigation would not conserve the Court's or parties' resources.

The court also denied a voluntary remand in *Utility* where a question regarding the extent of EPA's regulatory authority was "intertwined with any exercise of agency discretion going forward."[85]  The issues in this case are likewise intertwined with each other and with the agencies' exercise of their discretion going forward.  Reconsideration of only a few claims in isolation would lead to confusion.  For instance, DOI has agreed to consider water impacts as part of the subsistence evaluation, but Plaintiffs also contend that these issues were not adequately analyzed under the CWA, and the Corps has not agreed to reconsider these issues.

### 4.    Remand Without Vacatur Would Allow Irreversible Harm to Subsistence, Cultural Resources, and the Environment.

This litigation challenges federal agency decisions approving a massive industrial

---

[83] ECF 99; *NAEC*, ECF 99.

[84] *See Alaska Wildlife Alliance v. Haaland*, Order Mot. Stay, 3:20-cv-00209-SLG, ECF 61, at 13 (D. Alaska, Mar. 15, 2022) (denying stay where there was "no guarantee that staying the case … will ultimately narrow the scope of this litigation").

[85] *Utility,* 901 F.3d at 436 (quotation omitted).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          20

project encompassing a vast undeveloped region of Interior Alaska where indigenous people have maintained their traditional culture and way of life for millennia. The potential for irreversible harm to subsistence, cultural resources, and the environment to occur during the partial reconsideration proposed by Defendants weighs heavily against remand without vacatur because of the likelihood that such harm would be irreversible and because of the strong public interests at stake.[86]

Courts have declined to remand without vacatur when leaving in place approval for a pesticide toxic to honeybees risked more environmental harm than vacating it;[87] when leaving in place approvals for toxic herbicides would allow them to continue to be used;[88] and when leaving in place a decision to deregulate genetically modified beets posed a threat of irreparable harm to the environment.[89] Conversely, courts have granted the unusual remedy of remand without vacatur when the vacatur itself posed a threat of serious environmental harm[90] and when the purpose of an environmental protection statute would be thwarted by vacatur.[91]

---

[86] *See Center Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 953 (N.D. Cal. 2010) (potentially "irreversible" environmental harm is "different in character" than possible economic harm in context of requested remand without vacatur) (quotation omitted).
[87] *Pollinator*, 806 F.3d at 532.
[88] *National Family*, 960 F.3d at 1145.
[89] *Center*, 734 F. Supp. 2d at 951.
[90] *See Idaho Farm Bureau Fed. v. Babbitt*, 58 F.3d 1392, 1405-06 (9th Cir. 1995) (declining to vacate decision where doing so would risk extinction of snail species).
[91] *See California Comms. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012) (declining to vacate rule because doing so could lead to increased air pollution, contrary to goals of Clean Air Act).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          21

Case 3:20-cv-00253-SLG   Document 128   Filed 03/22/22   Page 23 of 32

Defendants erroneously contend that remand without vacatur poses no threat of harm because their planned suspension of the BLM and NPS rights-of-way will defer any further project activity, protect against any risk of harm, and preserve the status quo until after DOI completes its partial reconsideration.[92]  These assertions are inaccurate and misleading.  As discussed above, on-the-ground activities are already underway, and DOI's right-of-way suspensions would not preclude all further development work.

For example, DNR has already approved geotechnical drilling associated with the Ambler Road project at the John, Wild, and Koyukuk rivers near Evansville.[93]  The approved work will involve the drilling of 14 boreholes and 36 penetrometer holes; the use of a track-mounted sonic drill and other equipment; the extraction and spreading on-site of 8 to 10 tons or more of drilling soils; the creation of three large work camps, each with capacity for 15 personnel, as well as 1,500 square-foot workspaces at or near each of the 14 drilling sites, all requiring extensive tree and brush clearing as well as earth-moving work; and a variety of other activities, including seismic surveying, water extraction, overland transport, and fuel transportation and storage.[94]  All of this will occur near sensitive fish-bearing rivers and subsistence harvesting sites and in a region replete with cultural resources that Tribes hold sacred.  Drilling and earth-moving equipment could destroy irreplaceable cultural resources; oil spills, sewage, and erosion could

---

[92] *Supra* note 25 and accompanying text.
[93] *Supra* notes 36-37 and accompanying text.
[94] ECF 113, at 2; ECF 113-1, -2, -3.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          22

contaminate rivers and harm fish populations; noise and disturbance could affect wildlife and interfere with subsistence harvesting; and other types of harm could flow from DNR's permit as well.[95]

Relying on the federal reviews and decisions challenged in this litigation, DNR is also considering a long-term easement and land use plan that would allow even more extensive development work to proceed across 125 miles and 244,000 acres of State lands,[96] and this poses correspondingly greater risks of harm to subsistence, cultural resources, and the environment.

As described above, the 2022 field work under consideration by BLM and other agencies as part of the NHPA § 106 process would involve geotechnical drilling activities and work camps similar to those authorized by DNR at three river sites near Evansville, but they would be multiplied at dozens of sites across the entire 211-mile road corridor.[97] The field work would include vegetation clearing and site preparation at many more bridge sites and work camps, as well as at gravel extraction sites and helicopter landing zones. It would involve the drilling of *hundreds* of boreholes, and the use of tracked vehicles, drill rigs, caravans of heavy equipment, fuel tanks, and field camps. If approved, these industrial activities would occur at many fish-bearing rivers, subsistence harvesting sites, and sacred cultural sites. Here again, drilling and earth-moving

---

[95] ECF 113, at 2-3.
[96] *Supra* notes 38-41 and accompanying text.
[97] *Supra* notes 27-31 and accompanying text.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          23

equipment has the potential to destroy irreplaceable cultural resources; oil spills, sewage, and erosion could contaminate rivers and harm fish populations; noise and disturbance could affect wildlife and interfere with subsistence harvesting; and other types of harm could occur as well.

DOI's proposal for partial reconsideration—with the EIS, RODs, PA, Corps permit, and other reviews and decisions remaining in place in the meantime—contravenes the fundamental purposes of ANILCA § 810, NHPA § 106, CWA, and NEPA. These statutes emphasize the importance of agencies and the public fully considering impacts before decisions are made and without the influence of prior decisions that would tip the scale in favor of a particular outcome or alternative.[98] Moreover, because DOI's right-of-way suspensions would not preclude ongoing field work, remand without vacatur would likely result in on-the-ground changes and economic investments that would further entrench the current project and, as a practical matter, limit the agencies' ability to consider project design changes, new or modified routes, or other alternatives.

### 5. Remand Without Vacatur Would Severely Prejudice Plaintiffs.

Remand without vacatur would prejudice Plaintiffs in several ways. The ongoing project activities described above have the potential to damage or destroy their sacred sites; reduce the availability of fish, caribou, and other resources they depend on for

---

[98] *Supra* notes 61-71 and accompanying text.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG        24

spiritual, cultural, and physical sustenance; interfere with their subsistence harvesting activities; degrade the quality of water they use for drinking and other purposes; and undermine their fundamental human right to maintain their traditional indigenous way of life.  Moreover, remand without vacatur would prejudice Plaintiffs because leaving the permits in place and allowing ongoing activities would help make the project a *fait accompli* and entrench the likelihood that their traditional homelands will be transformed into an industrial zone.

Additionally, remand without vacatur would prejudice Plaintiffs by frustrating their statutory right to judicial review.  In *Utility*, the court denied remand because EPA's proposal to reconsider only a statutory interpretation issue would have prejudiced the plaintiffs' "vindication of their own [related] claim" regarding legacy waste ponds.[99] Similarly here, DOI's proposal for partial reconsideration with respect to just a few claims would leave Plaintiffs "stuck between a remand and a hard place."[100]  Plaintiffs would likely have to wait a year or more before adjudicating claims outside the scope of DOI's reconsideration, and the agency's actions during the partial reconsideration would create a confusing record and complicate the second round of litigation.[101]

---

[99] *Utility*, 901 F.3d at 436.

[100] *Limnia*, 857 F.3d at 388.

[101] *See Alaska Wildlife*, ECF 61, at 12, 14 (denying stay where "timeline and ultimate outcome of NPS's reassessment" of rule remained "uncertain" and Plaintiffs would be prejudiced by delay).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          25

### 6. Any Prejudice to Defendants and Intervenors Would Not Be Significant Enough to Warrant Remand Without Vacatur.

The presumption against remand without vacatur is strong, and Defendants have not identified any interests that would overcome it. Courts have repeatedly rejected such motions even in situations where there would be substantial and immediate economic harm, which is not the case here. In *National Family*, for instance, vacatur meant that some growers would be left with an unusable pesticide technology system and forced to expend additional money to protect their crops.[102] The Ninth Circuit recognized that they were in a bad situation "through no fault of their own" but still felt compelled to vacate due to EPA's multiple errors and substantial understatement of the risks posed by the pesticide.[103] In *SEACC*, this Court recognized that partially vacating an EIS would cause the timber industry to suffer economic harm but concluded that the harm was "not so disruptive and irremediable" as to justify departing from the "APA's normal remedy of vacatur."[104] A rare case allowing remand without vacatur involved an extreme situation in which delaying a power plant project could lead to potential blackouts and economic disaster.[105]

Neither proceeding with the merits nor vacatur would cause economic disruption here because the Ambler Road project remains in the early stages. Extensive

---

[102] *National Family*, 960 F.3d at 1145.
[103] *Id.*
[104] *SEACC*, 468 F. Supp. 3d at 1155.
[105] *California*, 688 F.3d at 992.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG          26

preconstruction activities, such as further permitting, fish surveys, gravel excavation, vegetation clearing, financing, engineering, and other actions are required before road construction begins. Mine permitting, approvals, and construction will take years as well. Defendants have thus acknowledged that "any economic benefits from the Ambler Road Project depend on an uncertain and lengthy timeline" and that AIDEA should have limited expectations about moving forward quickly.[106]

Defendants and Intervenors would not be prejudiced by moving forward promptly with merits briefing on the remaining disputed issues because they have had access to Plaintiffs' opening brief on the merits since December 1, 2021,[107] and they will have had several weeks to consider and address Defendants' admissions of legal errors.[108]

### B. REQUEST FOR RELIEF

Plaintiffs ask the Court to deny Defendants' motion for remand without vacatur and either allow merits briefing to proceed or simply vacate Defendants' unlawful reviews and decisions. As discussed above, proceeding with merits briefing would not prejudice any party. In light of the serious and fundamental legal violations that Defendants have already admitted, the Court would be justified in applying the default remedy of vacatur.[109] If the Court allows Defendants to proceed with a partial

---

[106] ECF 111, at 22.
[107] ECF 99.
[108] ECF 111.
[109] *Supra* notes 44-45 and accompanying text. Defendants' contention that vacatur is only appropriate after a decision on the merits does not reflect the law in the Ninth

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG        27

Case 3:20-cv-00253-SLG   Document 128   Filed 03/22/22   Page 29 of 32

reconsideration without vacatur, the Court should retain jurisdiction, require Defendants to provide a schedule, and compel regular progress reports. Plaintiffs reserve the right to seek interim relief as appropriate.

## V.     CONCLUSION

For the foregoing reasons, Defendants have failed to meet their burden to justify the unusual remedy of remand without vacatur. Plaintiffs respectfully urge the Court to deny Defendants' motion and either allow the parties to proceed with merits briefing or vacate Defendants' reviews and decisions. If the Court instead grants the motion, Plaintiffs ask the Court to retain jurisdiction, impose a schedule, and require progress reports.


DATED:  March 22, 2022


                          Respectfully submitted,

                          CLEMMER LAW OFFICE, LLC

                          By:        _s/ Teresa B. Clemmer_
                                 Teresa B. Clemmer (AK Bar No. 0111059)

                          *Counsel for Plaintiffs*

---

Circuit. Indeed, BLM and other federal defendants recently sought a voluntary remand with vacatur prior to a ruling on the merits after admitting that the right-of-way they had issued was not supported by adequate NEPA and NHPA reviews. *Native Am. Land Conserv. v. Haaland*, Defs. Not. Mot. Vol. Remand, 5:21-cv-00496-GW-AS, ECF 40 (C.D. Cal., Dec. 3, 2021).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG        28

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify that this brief contains 6,947 words, not including text exempted by Rule 7.4(a)(4). This complies with the increased word limit requested in Plaintiffs' accompanying motion for overlength brief, which would modify the default rule in Rule 7.4(a)(2).

*s/ Teresa B. Clemmer*
Teresa B. Clemmer

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 22, 2022, I caused copies of the following:

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR VOLUNTARY REMAND and [PROPOSED] ORDER

to be filed with the Court and served by electronic means on all counsel of record through the Court's CM/ECF system.

_s/ Teresa B. Clemmer_
Teresa B. Clemmer

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
VOLUNTARY REMAND, *Alatna Village Council v. Heinlein,* 3:20-cv-00253-SLG