TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

ELISABETH H. CARTER (New York State Bar No. 5733274)
ALBERT LIN (California State Bar No. 338253)
Trial Attorneys, Environmental Defense Section
P.O. Box 7611 Washington, D.C. 20044
202-514-0286 (Carter) || 202-305-8865 (fax)
202-514-2741 (Lin)
elisabeth.carter@usdoj.gov
albert.lin@usdoj.gov

PAUL A. TURCKE (Idaho Bar No. 4759)
Trial Attorney, Natural Resources Section
c/o U.S. Attorney's Office
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALATNA VILLAGE COUNCIL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN COHN, in his official capacity as BLM Alaska State Director, *et al.*, <br><br> Defendants, <br><br> and <br><br> AMBLER METALS, LLC, *et al.*, <br><br> Intervenor-Defendants. | Case No. 3:20-cv-00253-SLG |

## DEFENDANTS' RESPONSE TO MOTION FOR CLARIFICATION

*Alatna Village Council v. Cohn*
DEFS.' RESP. TO MOT. FOR CLARIFICATION

Case No. 3:20-cv-00253-SLG
1

This matter is before the Court on a Joint Motion for Clarification (ECF No. 172) ("Ints.' Mot.") filed by Intervenor-Defendants Alaska Industrial Development and Export Authority ("AIDEA"), NANA Regional Corporation, Inc., Ambler Metals, LLC, and the State of Alaska (collectively, "Intervenors"). The motion should be denied because it fails to identify a basis for the requested clarification in any procedural rule or relevant authority, and because Intervenors improperly seek an advisory opinion and to re-litigate issues this Court has already decided.

Intervenors are attempting to obtain authorization from this Court to proceed with pre-construction ground-disturbing activities on nonfederal lands. To accomplish this, they seek clarification of the Court's prior orders. But the order is clear on its face and requires that Intervenors obtain approval from BLM to proceed only after the National Historic Preservation Act ("NHPA") requirements of the Programmatic Agreement ("PA") are met. Intervenors have received no such approval. That leaves Intervenors with a request for the Court to reconsider and modify its prior opinion. But Intervenors meet none of the limited exceptions that set a high bar for reconsideration. Intervenors fail to demonstrate any clear error, manifest injustice, or other extraordinary circumstances. As such, Intervenors are left to rehash prior arguments that would force this Court to render an advisory opinion for claims presumably between Intervenors and Defendants that have never been pled.

Intervenors' request also fails because they cannot show that BLM is doing anything other than applying the express terms of the PA. The PA is not limited to

federal lands and BLM and other signatories are proceeding in accordance with the terms of the PA. The scope and reach of the NHPA more broadly than the scope of this specific PA is not at issue here.

## BACKGROUND

The Court is quite familiar with the Ambler Road Project, having received briefing from a total of seven different parties on three different contested motions within the last year. *See* Order Re Motions for Voluntary Remand, ECF No. 142 (*N. Alaska Env't Ctr. v. Haaland*, No. 3:20-CV-00187-SLG, 2022 WL 1556028 (D. Alaska May 17, 2022)); Order Re Motions for Reconsideration, ECF No. 150 (*N. Alaska Env't Ctr. v. Haaland*, No. 3:20-CV-00187-SLG, 2022 WL 2753568 (D. Alaska June 14, 2022)); Text Order (dated Sept. 22, 2022), ECF No. 160 (denying Joint Request for Status Conference as moot). Defendants summarize only the relevant legal background, the Programmatic Agreement, the August 2022 approval of AIDEA's Annual Work Plan, and related correspondence.

## I. Legal Background - National Historic Preservation Act

The NHPA creates obligations "that are chiefly procedural in nature." *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1097 (9th Cir. 2005) (citation omitted). The NHPA "is a 'stop, look, and listen' provision that requires each federal agency to consider the effects of its programs," but does not require that the agency reach particular outcomes. *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 805 (9th Cir. 1999); *see also* 54 U.S.C. § 306108 (formerly 16 U.S.C. § 470f (2013)).

NHPA Section 106 requires federal agencies to "take into account the effect of

*Alatna Village Council v. Cohn*
Defs.' Resp. to Mot. for Clarification

Case No. 3:20-cv-00253-SLG
3

Case 3:20-cv-00253-SLG   Document 179   Filed 02/16/23   Page 3 of 23

[an] undertaking on any district, site, building, structure or object that is included in or eligible for inclusion in the National Register of Historic Places." 54 U.S.C. § 306108. An undertaking is:

> a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval.

36 C.F.R. § 800.16(y) (2023).

Regulations promulgated by the Advisory Council on Historic Preservation ("ACHP") set forth procedures for implementing the NHPA. 36 C.F.R. Part 800. The regulations require an agency to "make a reasonable and good faith effort to identify historic properties," "determine whether identified properties are eligible for listing on the National Register," and "assess the effects of the undertaking on any eligible historic properties found." *Muckleshoot*, 177 F.3d at 805. During the Section 106 process, the agency must confer with the appropriate State or Tribal Historic Preservation Officer ("SHPO" or "THPO") and, in certain situations, consult with the Advisory Council. *Id*. The agency must also seek to consult with "any Indian tribe . . . that attaches religious and cultural significance to historic properties that may be affected by an undertaking." 36 C.F.R. § 800.2(c)(2)(ii). Agencies generally carry out their Section 106 compliance in conjunction with their efforts to address similar procedural requirements of the National Environmental Policy Act. *Id*. §§ 800.3(b); 800.8.

The NHPA regulations further provide that agencies may negotiate a programmatic agreement ("PA") with the Advisory Council and SHPO to establish

*Alatna Village Council v. Cohn*
Defs.' Resp. to Mot. for Clarification

Case No. 3:20-cv-00253-SLG
4

Case 3:20-cv-00253-SLG   Document 179   Filed 02/16/23   Page 4 of 23

alternative procedures for considering and resolving the effects of complex projects or multiple undertakings. *Id.* § 800.14(b). A PA may be used to create a consistent streamlined consultation process for routine and repetitive undertakings, or "[w]hen effects on historic properties cannot be fully determined prior to approval of an undertaking[.]" *Id.* § 800.14(b)(1)(ii). "Compliance with the procedures established by an approved [PA] satisfies the agency's section 106 responsibilities for all individual undertakings of the program covered by the agreement." *Id.* § 800.14(b)(2)(iii). Conversely "noncompliance with the [PA] terms would not satisfy those [Section 106] obligations." *Narragansett Indian Tribe by & Through Narragansett Indian Tribal Historic Pres. Off. v. Nason*, No. CV 20-576 (RC), 2020 WL 4201633, at *2 (D.D.C. July 22, 2020).

## II.     The Ambler Road PA

Defendants addressed their Section 106 obligations for the Ambler Road Project by utilizing a PA. *See* BLM_0016726 (Record of Decision discussion of NHPA analysis and basis for entering PA).[1] The PA defines its scope, sets out each signatory's roles and responsibilities, and provides a framework for decision-making.

Beginning with scope, the PA applies "to the Project and all of its Phases, Components, and Stages . . . so long as the activities occur within the jurisdiction of a state or federal agency." BLM_0101244. The PA further defines the "Project"as "[a]ll aspects, including those not currently defined but may be defined in the future[,] for the

---

[1]     The entire text of the PA is provided herewith as Exhibit 2.

*Alatna Village Council v. Cohn*
Defs.' Resp. to Mot. for Clarification

Case No. 3:20-cv-00253-SLG
5

Ambler Mining District Industrial Access Road." BLM_0101287. The "Pre-Construction Phase . . . includes those activities required to complete permitting and design, such as: geotechnical investigations at bridge locations, along the corridor centerline to refine the embankment design . . . wetland delineation on areas not field delineated; hydrology studies; and cultural resource surveys." *Id*. In the turn, in the PA "Stages/Project Stages" refers to "[s]pecific construction steps or activities that would occur within each Project Phase or Component (e.g. survey, geotechnical drilling, etc.)." BLM_0101288.

In defining the geographic scope of the PA, "BLM and SHPO, in consultation with other interested parties, established the undertaking's Area of Potential Effects (APE)." BLM_0016726. "The APE applies to *all lands, regardless of management status*, that may be affected by the Project undertaking, including areas within 1 mile of *all Project components*." *Id*. (emphasis added). The terms and all stipulations of the PA are "made part of . . . [the] BLM ROW authorization" for the Ambler Road. BLM_0016733.

The required PA signatories include BLM, SHPO, and ACHP, while AIDEA and the Alaska Department of Natural Resources ("ADNR") are invited signatories. *Id*.; *see also* BLM_0101273 (AIDEA signature page); BLM_0101274 (ADNR signature page). The PA provides that BLM carries out "lead federal agency responsibilities for Section 106." BLM_0101241. Following consultation with BLM, AIDEA "agreed to carry out the Stipulations" in the PA. BLM_0101243. The Section of the PA entitled "Agency Roles and Responsibilities" provides:

The BLM, the NPS, the USACE, and State shall ensure that no ground disturbance, including brush clearing, geotechnical surveys, or any other activity associated with the Project that may affect historic properties, takes place within a Project Segment, Stage, or Component until identification, evaluation, and on-site measures for resolution of adverse effects have been completed for that Segment, Stage, or Component.  The NPS, the USACE, and State will inform the BLM in writing once the stipulations within each agency's scope, as outlined in this PA, have been satisfied by the Permittee. *The BLM* will then provide written notice to the Permittee that Section 106 requirements have been satisfied for that Segment, Stage, or Component.

BLM_0101245 (emphasis added).

BLM's lead role is similarly acknowledged elsewhere within the PA:

Prior to commencement of any activities that could affect historic properties, the Permittee must receive written notice from the BLM that Section 106 requirements have been satisfied for that Segment, Stage, or Component.

BLM_0101246; *see also* BLM_0101259 (providing that no work may be initiated "on any Project Phase, Component, Stage, or Segment" until BLM "provides the Permittee with written notification that the Section 106 requirements have been met" and describing BLM's role and authority under the PA to issue "stop work" orders).

The PA further describes a "four step process" for proceeding with the undertaking, including submission of an Annual Work Plan.  BLM_0101249.  Before work can proceed, "BLM and the SHPO must approve of the Annual Work Plan" and "any work that will occur under [National Park Service ("NPS")] jurisdiction will also require approval" by that agency.  BLM_0101250.  The PA contemplates the possibility of disagreement between signatories, and prescribes a dispute resolution process.  *See* BLM_0101267 (explaining that BLM shall first consult with the objecting party, and seek ACHP advice in attempting to resolve any continuing dispute).  Again, the dispute

resolution provision makes clear BLM's lead role under the PA. If the ACHP provides advice on resolving the dispute, BLM "shall prepare a written response that takes into account" the ACHP advice and "[t]he BLM will then proceed according to its final decision." *Id.* § XVI.A.i. If ACHP does not provide advice to BLM, then "BLM may make a final decision on the dispute and proceed accordingly." *Id.* § XVI.A.ii. If any signatory determines that the PA terms "will not or cannot be carried out" then the signatory can consult with other signatories to pursue an amendment. BLM_0101268. If "an amendment cannot be reached, any PA Signatory may terminate the PA upon written notification to the other PA Signatories." *Id.* If the PA is terminated, BLM must demonstrate an alternative manner of Section 106 compliance "prior to work continuing on the Undertaking." *Id.*

### III.    Procedural Background

The underlying actions seek to challenge Defendants' 2020 decision authorizing the Ambler Road Project. *See N. Alaska Env't Ctr.*, 2022 WL 1556028, at *1-2. In lieu of a response to Plaintiffs' opening merits briefs, Defendants successfully moved for voluntary remand of the challenged decision. *Id.*

Intervenors' motion begins by describing what they call the "Remand Order," ECF No. 142, and the "Reconsideration Order," ECF No. 150. *See* Ints.' Mot. 2-3. But that discussion does not identify ambiguity or a need to clarify either order; it instead mischaracterizes the Reconsideration Order. Intervenors contend that the Reconsideration Order's "notice requirements specifically apply to 'federal lands.'" Ints.' Mot. 3. In fact, the Order references both federal lands and ground disturbing

*Alatna Village Council v. Cohn*
Defs.' Resp. to Mot. for Clarification

Case No. 3:20-cv-00253-SLG
8

Case 3:20-cv-00253-SLG   Document 179   Filed 02/16/23   Page 8 of 23

activities occurring pursuant to *any* authorization.  Specifically, the Order states:

> BLM and NPS must: (1) provide prompt notice to Plaintiffs of any *applications and authorizations for activities on federal lands* related to the Ambler Road and (2) provide no less than 28 days' notice to Plaintiffs in advance of *any ground-disturbing activities occurring pursuant to the 404 permit or other authorizations*, except no notice is required to proceed with limited brush clearing solely to allow for helicopter landings.

Recon. Order 12, ECF No. 150 (emphasis added).  While the first notice requirement is limited to activities on federal lands, the second applies broadly to "any ground-disturbing activities" proceeding under the Army Corps of Engineers section 404 permit "or other authorizations."

The motion specifically concerns BLM's "conditional approval" of AIDEA's Annual Work Plan.  During the process of evaluating the Work Plan application, BLM advised AIDEA that the PA applies "to the full length" of the Project.  *See* BLM Letter (dated May 27, 2022), Exhibit 3 hereto.  After consulting with the other signatories to the PA, BLM issued that approval on August 19, 2022, explaining that AIDEA's application was evaluated primarily under the terms and procedures of the PA.  *See* Annual Work Plan Approval 1, Exhibit 4 hereto.  BLM approved activities relating to cultural resource inventory, hydrological investigation/fish habitat study, clearing helicopter landing zones, and wetlands delineation and related activities including geophysical investigations.  *Id.* 2-3.  Geotechnical drilling, by contrast, was not approved, because "BLM, with SHPO's concurrence, has determined that this work has the potential to adversely affect historic

*Alatna Village Council v. Cohn*
Defs.' Resp. to Mot. for Clarification

Case No. 3:20-cv-00253-SLG
9

properties and monitoring is not an acceptable alternative to inventory." *Id*. 4.[2] The Corps similarly concluded that "full cultural resource inventories must be completed prior to any geotechnical exploratory activities associated with the Section 404 Permit." *Id*.

On November 18, 2022, ADNR wrote to BLM to, among other things, advance its view that "AIDEA has satisfied the PA stipulations" within ADNR's "scope of authorities" relating to geotechnical field investigations (including drilling boreholes) on the John, Wild, and Koyukuk Rivers. *See* ADNR Letter (dated Nov. 18, 2022) 1, Exhibit 5 hereto. BLM responded through a letter dated December 5, 2022, advising that BLM did not "see a path to resolution in the near-term" as requested by ADNR. BLM Letter (dated Dec. 5, 2022) 1, Exhibit 6 hereto. BLM concluded that the ADNR letter did not raise new information "that would cause the BLM to revisit its determination." *Id*. 2. The parties have continued to exchange correspondence addressing this issue and other matters relating to BLM's Annual Work Plan approval. *See* AIDEA Letter to BLM (dated Dec. 13, 2022), Exhibit 7 hereto; BLM Letter to AIDEA (dated Jan. 25, 2023), Exhibit 8 hereto. During the course of this communication, Intervenors filed the motion.

## LEGAL STANDARDS

### I.     Motion for Clarification

Intervenors state only that they "move this Court for clarification of its Orders on

---

[2]     Defendants include all of the attachments to the August 19 Approval letter. In particular, the SHPO "also agree[d] that geotechnical drilling or land clearing/site preparation in support of drilling has the potential to adversely affect historic properties." *Id*. 7.

Remand and on Reconsideration." Ints.' Mot. 1. "Neither the Federal Rules of Civil Procedure nor the Local Rules generally provide for a motion for clarification." *Beyond Blond Prods., LLC v. Heldman*, No. CV20-5581DSF(GSJx), 2020 WL 11886260, at *2 (C.D. Cal. Oct. 29, 2020) (citing *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011)). At least within some circuits, a party may appropriately seek to "explain or clarify something ambiguous or vague" or to construe the scope of an order "by applying it in a concrete context or particular factual situation." *See Philip Morris*, 793 F. Supp. 2d at 168-69 (quotation and citation omitted); *see also Sai v. Transp. Sec. Admin.*, No. CV 14-403 (RDM), 2015 WL 13889866, at *3 (D.D.C. Aug. 19, 2015) (finding a motion to seek clarification appropriate "[w]here a decision contains a ministerial error or ambiguity that leave the parties genuinely unsure of the court's intent"). But a motion for clarification "cannot open the door to 're-litigat[ing] a matter that the court has considered and decided[.]'" *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 99 (D.D.C. 2018) (bracketing in original) (quoting *Sai*, 2015 WL 13889866 at *3). Where a motion for clarification fails to identify ambiguity in the prior order, seeks to re-litigate prior issues, or suggests a court should alter or amend a prior ruling, the motion will be treated as one for reconsideration or for "relief from a judgment or order under Rule 60(b)." *Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 164 F. Supp. 3d 56, 61 (D.D.C. 2016); *Beyond Blond Prods.*, 2020 WL 11886260 at *2.

## II.     Motion for Reconsideration or Relief from Order Under Rule 60(b)

Rule 60(b) identifies grounds for "relief from a final judgment, order, or

proceeding."[3] None of the grounds for relief in subsections (1) through (5) apply here, so if the motion is considered under Rule 60(b) it falls under subsection (6) which provides for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6); *see also Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 863 (1988). This provision "has been used sparingly as an equitable remedy to prevent manifest injustice" and is invoked only in "extraordinary circumstances." *United States v. Alpine Land & Reservoir Co*., 984 F.2d 1047, 1049 (9th Cir. 1993). Relief is properly denied when a movant offers "nothing more than a reiteration of an argument . . . . previously considered and rejected" by the Court. *Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995); *see also Sai*, 2015 WL 13889866 at *3 (a motion for reconsideration is improper where it "seeks legal advice from the Court or seeks to reargue matters previously considered and decided by the Court").

This Court's Local Civil Rules, like many, provide guidance independently of the Federal Rules of Civil Procedure on motions for reconsideration. "Local Civil Rule 7.3(h) provides that '[a] court will ordinarily deny a motion for reconsideration absent a showing of one of the following: (A) manifest error of the law or fact; (B) discovery of new material facts not previously available; or (C) intervening change in the law.'" *N. Alaska Env't Ctr.*, 2022 WL 2753568, at *2 (quoting L. Civ. R. 7.3(h)).

---

[3]    Motions for "reconsideration" are sometimes also considered under Rule 59(e), which addresses a motion to alter or amend a judgment. But that rule is inapplicable here because no judgment has been entered. *See* Fed. R. Civ. P. 59(e).

## <u>ARGUMENT</u>

Intervenors have not identified a proper basis for bringing their concerns about the Annual Work Plan before the Court. They do not appropriately seek to "clarify" the Court's prior Orders, nor can they properly seek reconsideration or modification of those Orders. Instead, they seek an advisory opinion concerning the scope of BLM's authority to implement the PA, and they invite the Court to oversee PA implementation. The Court should deny the motion on this threshold basis. Even if the Court considers Intervenors' arguments, however, the motion should be denied because BLM and other signatories of the PA have acted in accordance with its terms.

### I.     Intervenors Fail to Present any Basis for Their Requested Relief

The Motion is fundamentally defective because Intervenors fail to identify the basis for seeking their requested relief. A motion must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1); *see Boring v. Nationstar Mortg., LLC*, No. 2:13-CV-01404-GEB-CMK, 2014 WL 66776, at *3 (E.D. Cal. Jan. 7, 2014) (dismissing portion of motion lacking "sufficient clarity" to meet Rule 7(b)(1)); *Collins v. Tenoria*, No. 08-CV-00430-PHX-ROS, 2009 WL 2222715, at *3 (D. Ariz. July 23, 2009). Even when interpreted in a "flexible" manner, a sufficient motion must provide parties "with a meaningful opportunity to respond and the court with enough information *to process the motion correctly*." *Registration Control Sys., Inc. v. Compusystems, Inc.*, 922 F.2d 805, 807-08 (Fed. Cir. 1990) (emphasis added). The Motion falls far short of this bar, both because it fails to identify a legal basis for relief and because it fails to satisfy the standard for any plausibly applicable basis.

*First*, the motion does not actually seek "clarification."  Rather than addressing some ambiguity or simple error in the Remand or Reconsideration Orders, it attempts to revisit issues that could have been previously raised or that were resolved in the Court's prior Orders.  *See Philip Morris*, 793 F. Supp. 2d at 168-69.  To the extent the Motion is construed as seeking clarification, therefore, the motion should be denied.  *See Kirwa v. U.S. Dep't of Def.*, 315 F. Supp. 3d 266, 267 (D.D.C. 2018) (denying motion because "there is nothing ambiguous or vague" about the subject order).

*Second*, if construed as seeking reconsideration, the motion disregards the procedural requirements of Local Civil Rule 7.3(h).  That Rule identifies the standard for such motions, *id*. (h)(1), timing and page limitations, *id*. (h)(2), and specific procedures for the filing of any response, *id*. (h)(3).  The parties followed these procedures earlier in the proceedings when Plaintiffs sought reconsideration of the Remand Order.  *See* ECF No. 144.  Intervenors should not benefit by disregarding those same procedures.

*Third*, the motion does not meet the heavy burden for relief under Rule 60(b).  The motion does not identify any of the reasons for relief identified in subsections (1) through (5), and does not demonstrate clear error, manifest injustice, or any other extraordinary instance making (6) applicable.  Instead, the motion attempts "to 'rehash' previously rejected arguments or to try new ones that could have been raised prior to the court's initial decision."  *Sai*, 2015 WL 13889866 at *2 (quoting *Arias v. DynCorp*, 856 F. Supp. 2d 46, 51 (D.D.C. 2012)); *see also Blankenship v. First Nat'l Ins. Co. of Am.*, No. C21-5914 BHS, 2022 WL 1090554, at *1 (W.D. Wash. Mar. 22, 2022) (reconsideration does not exist "to provide litigants with a second bite at the apple").

*Fourth*, the motion is an improper vehicle by which to raise new claims against Defendants. Insofar as Intervenors seek review of BLM's partial denial of the Annual Work Plan, Intervenors invite the Court to act as a referee in an apparently evolving dispute that *Intervenor-Defendants* seek to pursue with Defendants. But the ostensible case or controversy underlying the existing cases was framed by *Plaintiffs*, who challenge Defendants' approval of the Ambler Road Project. Intervenor-Defendants cannot evade basic jurisdictional principles by seeking relief against Federal Defendants through a motion to "clarify" the Remand and Reconsideration Orders.

Intervenors, in sum, have failed a basic requirement of a properly filed motion – to identify with particularity the grounds upon which they seek relief. But even a relaxed application of this requirement cannot save the motion. Because Intervenors fail to demonstrate how the motion satisfies any of the conceivable grounds for seeking relief, the motion should be denied.

## II.     Intervenors' Concerns are Governed by the Programmatic Agreement

Aside from its procedural infirmities, the motion cannot be reconciled with any rational interpretation of the PA. Again, the PA is the means that the signatories have chosen to comply with the NHPA. BLM_0016726; *Colorado River Indian Tribes v. Dep't of Interior*, No. EDCV14-02504JAK(SPx), 2015 WL 12661945, at *13 (C.D. Cal. June 11, 2015) (comparing utilization of PA to alternative means of NHPA compliance); *see also* Ints.' Mot. 6-7. And a PA effectively serves as a contract among the signatories. *See Battle Mountain Band of Te-Moak Tribe of W. Shoshone Indians v. U.S. Bureau of Land Mgmt.*, 302 F. Supp. 3d 1226, 1235 (D. Nev. 2018). Intervenors offer little more

than frustration with the choices that BLM and other signatories have made in discharging their collective responsibilities under the PA. Intervenors' broad arguments about the Alaska National Interest Lands Conservation Act ("ANILCA") and state sovereignty, *see* Ints.' Mot. 11-13, are simply irrelevant.[4] AIDEA applied to federal agencies to obtain a right-of-way and additional federal approval(s) necessary to construct the Ambler Road, and AIDEA (and ADNR) voluntarily entered the PA. Intervenors' arguments find no support within the four corners of the PA.

---

[4] Intervenors citation to *Sturgeon v. Frost*, 577 U.S. 424, 425 (2016), and suggestion that ANILCA Section 201(4) overrides compliance with statutes like NHPA is incorrect. ANILCA's direction that the Secretary of the Interior "shall" permit authorization of an Ambler Road does not relieve the Department of its obligations under other laws. The requisite clear and irreconcilable conflict is lacking between any ANILCA directives, and the procedures required by the NHPA. *Cf. Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Oklahoma*, 426 U.S. 776, 788 (1976); *Merrell v. Thomas*, 807 F.2d 776, 779 (9th Cir. 1986) (statutes contained materially different provisions); *Westlands Water Dist. v. Nat. Res. Def. Council*, 43 F.3d 457, 460 (9th Cir. 1994) (timing provisions of statute did not allow sufficient time to comply with NEPA).

A.    The PA Covers all Project Lands

Intervenors' position is grounded in the view that the NHPA applies solely to activities on federal lands, so that the NHPA does not "grant BLM control over State and private landowners' activities on their own land." Ints.' Mot. 14, *see also id*. 7 n.5. Intervenors' argument conflates the federal involvement that triggers the NHPA compliance obligation with the means that all PA signatories chose to satisfy that obligation and resolve any adverse effects to eligible historic properties. And on the latter, the means is clear: they agreed to a process for identifying eligible historic properties and assessing and resolving effects to them that applies across all lands, regardless of ownership. The handful of cases Intervenors cite to support their position are not relevant to the key question of the scope of the PA and so are readily distinguishable.

The cases that Intervenors rely upon turned on determinations that an NHPA undertaking no longer (or never) existed, or applied only to narrow federal components of a broader project. Perhaps most illustrative is *Sierra Club v. U.S. Army Corps of Engineers*, 803 F.3d 31, 48 (D.C. Cir. 2015), cited for the proposition that BLM does not have authority "to prohibit or control those aspects of the Project not subject to federal approval." Ints.' Mot 15-16 n.14. That case offers factual similarity, insofar as it involved approval and construction of a pipeline – a linear feature like the Ambler Road. And the plaintiffs in that case argued that federal agencies had failed to perform a

"whole-pipeline NEPA analysis" of the entire project's environmental impacts.[5]  But the similarities end there, because while the scope of NEPA responsibilities in that case turned on the degree of federal control over the project (which involved only "easements over small pieces of federal land"), *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 35-36 (D.D.C. 2013), the parties' NHPA compliance obligations in this case are governed by the PA, and the PA itself defines its scope.

The federal agencies in this case considered alternatives and ultimately authorized the Ambler Road project through the Joint ROD.  The Joint ROD makes clear that the APE – which clarifies the geographic scope of the PA – "applies to all lands, *regardless of management status*, that may be affected by the Project undertaking, including areas within 1 mile of *all Project components*."  BLM_0016726.  In this case, the PA covers the entire "Project."  BLM_0101241; *see also* BLM_0101244 ("[t]his PA shall apply to the Project and all of its Phases, Components, and Stages").  AIDEA signed the PA, thereby agreeing to this definition of the scope of the PA.  BLM_0101243; BLM_0101273.  Nothing in the NHPA precluded the signatories, including BLM or AIDEA, from negotiating the PA to define "Project" as they did, to include the entire Project area.

The PA, in sum, clearly defines its scope to include the entire project, was agreed

---

[5]     While *Sierra Club* largely addresses NEPA compliance, NEPA and NHPA procedures can, should the action agency decide to exercise its authority as such, involve "essentially coterminous" determinations often allowing an outcome under one statute to inform analysis of a comparable question under the other.  *See Ringsred v. City of Duluth*, 828 F.2d 1305, 1309 (8th Cir. 1987), *cert. denied*, 493 U.S. 1020 (1990).

to by each signatory (including AIDEA and Alaska), and is not contrary to the NHPA. Intervenors provide no basis for interpreting the PA more narrowly than its plain terms provide.

B.     <u>BLM is Proceeding in Accordance with the PA</u>

Intervenors' argument that the PA does not "extend BLM's statutory authority to State and private lands" is only true as far it goes. *See* Ints.' Mot. 18. The PA does not create or extend federal statutory authority. Instead, the PA is a negotiated means through which the consulting parties agree to the steps necessary to comply with Section 106. Here, the consulting parties agreed (and the PA makes clear) that the PA's terms and stipulations govern the entire Project. The signatories are continuing to act in their respective roles to implement those terms and stipulations.

Intervenors advance the mistaken view that the PA "recognizes that the State and federal governments have control within their separate spheres, particularly in managing activities on their respective lands and agency jurisdictions." *Id.* But their argument finds no support in the referenced portion of the PA, which makes clear that BLM must ultimately address the input from the various agencies before determining that ground disturbance can occur. It says:

> The BLM, the NPS, the USACE, and State shall ensure that no ground disturbance, including brush clearing, geotechnical surveys, or any other activity associated with the Project that may affect historic properties, takes place within a Project Segment, Stage, or Component until identification, evaluation, and on-site measures for resolution of adverse effects have been completed for that Segment, Stage, or Component. The NPS, the USACE, and State will inform the BLM in writing once the stipulations within each agency's scope, as outlined in this PA, have been satisfied by the Permittee. The BLM will then provide written notice to the Permittee that Section 106

requirements have been satisfied for that Segment, Stage, or Component. BLM_0101245. While Intervenors focus on the language directing NPS, the Corps, and the State to evaluate compliance "within each agency's scope," this language is procedural, not jurisdictional. It prescribes the manner in which to initially "ensure" compliance. The last sentence makes clear that the ultimate determination, and thus notice to proceed, must come from BLM.

Additional provisions of the PA clarify this distinction and BLM's role as the lead agency. For example, while BLM, NPS and the Corps "shall enforce the terms of this PA within each agency's scope" it is BLM that shall ultimately "ensure that measures are taken to resolve non-compliance issues." BLM_0101244. And it is BLM who "shall ensure the Permittee does not initiate work on any Project Phase, Component, Stage, or Segment, until on-site actions to carry out the Alternative Four Step Process have been completed." BLM_0101259. That Four Step Process specifically addresses the Annual Work Plan, where BLM again acts in a lead capacity to facilitate review and any approval. BLM_0101249. Both BLM and SHPO "must approve of the Annual Work Plan before it can be implemented," along with NPS where work is proposed within its jurisdiction. BLM_0101250.

BLM, SHPO, and NPS are acting reasonably and following the procedures outlined by the PA. Contrary to Intervenors' view, BLM is not usurping authority to categorically prohibit all activities or ignoring the PA to impose an "environmental status quo" standard. Intervenors' mischaracterizations to this effect ignore the fact that BLM, SHPO, and NPS concurred in the Annual Work Plan approval. More fundamentally,

*Alatna Village Council v. Cohn*
Defs.' Resp. to Mot. for Clarification

Case No. 3:20-cv-00253-SLG
20

Case 3:20-cv-00253-SLG   Document 179   Filed 02/16/23   Page 20 of 23

however, Intervenors' grievances over ongoing implementation of the PA are not properly before the Court.

C.    <u>Intervenors Are Not Entitled to An Advisory Opinion Construing the PA.</u>

Intervenors' Motion should also be denied because it seeks an advisory opinion. Intervenors ask this Court to affirm the abstract proposition that neither applicable law nor the PA "grant [BLM] authority to bar activities on State and ANC lands." Prop. Order 1-2, ECF No. 173 in Case No. 3:20-cv-00187-SLG. But this relief would not clarify the Remand or Reconsideration Orders; it would instead advance a blunt (and incorrect) statement cutting across significant legal territory. As signatories to the PA, AIDEA and ADNR have the option of pursing the dispute resolution process set out therein. BLM_0101267. And if Intervenors are dissatisfied with the outcome of that process, or otherwise feel the PA terms are not being carried out, AIDEA (or ADNR) can seek amendment of the PA or seek to terminate the PA. BLM_0101268. What they cannot do is obtain that same relief from a Court order in this case.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny Intervenors' Motion for Clarification.

Respectfully submitted this 16th day of February 2023.

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

ELISABETH H. CARTER
ALBERT LIN
Trial Attorneys,

Environmental Defense Section
P.O. Box 7611 Washington, D.C. 20044
202-514-0286 (Carter) || 202-305-8865 (fax)
202-514-2741 (Lin)
elisabeth.carter@usdoj.gov
albert.lin@usdoj.gov

*/s/ Paul A. Turcke*
PAUL A. TURCKE
Trial Attorney, Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Attorneys for Defendants*

Of Counsel:

MIKE GIERYIC
Office of the Regional Solicitor, Alaska Region
4230 University Drive, Suite 300
Anchorage, AK 99508
907-271-1420
mike.gieryic@sol.doi.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.4(a)(3), I hereby certify that this memorandum complies with the type-volume limitation of Local Civil Rule 7.4(a)(2) because this memorandum contains 5,301 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4). This memorandum has been prepared in a proportionately spaced typeface, Times New Roman 13-point font, and I obtained the word count using Microsoft Word 365 MSO (Version 2211 Build 16.0.15831.20220) 32-bit.

*/s/ Paul A. Turcke*
Paul A. Turcke

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2023, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

/s/ Paul A. Turcke
Paul A. Turcke

*Alatna Village Council v. Cohn*
Defs.' Resp. to Mot. for Clarification

Case No. 3:20-cv-00253-SLG
23

Case 3:20-cv-00253-SLG   Document 179   Filed 02/16/23   Page 23 of 23